Norine Rakowski, Appellant, v Barry Rakowski et al., Respondents.

Second Department, June 3, 1985

### APPEARANCES OF COUNSEL

*Ashley, Lewittes & Burton* (*Paul Lewittes* of counsel; *J. Anthony Burton* on the brief), for appellant.

*Ira Richard Bennett* for Barry Rakowski, respondent.

### OPINION OF THE COURT

MANGANO, J. P.

In July 1981, the plaintiff herein, Norine Rakowski, commenced the instant action against defendant Barry Rakowski and two corporate defendants seeking, *inter alia,* to impose a constructive trust upon the shares of a cooperative apartment, i.e., apartment 16E, located at 118-17 Union Turnpike in Forest Hills, Queens, which had originally been rented by the Rakowskis in 1977 and had served as their marital residence. The complaint alleged, *inter alia,* that (1) the lease on apartment 16E expired on March 30, 1981 and at that time a "co-operative offering plan was still pending", (2) on April 10, 1981, plaintiff was advised by defendant Foremost Management Corp. that defendant Barry Rakowski had made a $1,000 deposit "towards the purchase of the co-operative stock allocated to apartment 16-E" and that the purchase could only be consummated by plaintiff and defendant Barry Rakowski "jointly", and (3) shortly thereafter, on April 15, 1981, defendant Barry Rakowski purchased the stock "allocated to apartment 16-E" in his own name, by "unlawful and improper" means. The complaint alleged that although defendant Barry Rakowski was the sole record owner of the cooperative apartment, plaintiff was entitled to a constructive trust for her benefit "consisting of a one-half interest

in and ownership of the stock and proprietary lease allocated to said apartment 16-E".

The Rakowskis were also parties to a matrimonial action which was commenced by Barry Rakowski in May 1980 prior to July 19, 1980, the effective date of the Equitable Distribution Law (*see,* L 1980, ch 281, § 47).

In the matrimonial action, Norine Rakowski interposed (1) an answer containing a general denial of the complainant's allegations of cruel and inhuman conduct, and (2) a counterclaim. The counterclaim sought a divorce based on Barry Rakowski's cruel and inhuman treatment, and also made certain allegations with respect to jointly owned business property and a condominium located in Fort Lee, New Jersey. Specifically, the counterclaim alleged: "(e) on or about March 29, 1980, plaintiff locked defendant out of the business they owned together, refused to have defendant draw any money from the business while plaintiff continued to operate the business as a sole proprietorship and draw money from it; (f) defendant contributed approximately $18,000., towards purchase of a condominium in Ft. Lee, New Jersey, which plaintiff has and refuses to return".

No mention was made in the matrimonial counterclaim regarding the marital apartment, and during the trial of the matrimonial action, which was conducted on April 10, 1981, Norine Rakowski did not introduce any evidence regarding or seeking to explore the ramifications of the proposed conversion of the apartment to cooperative status.

A final judgment, *inter alia,* (1) granting Barry Rakowski a divorce against Norine Rakowski, (2) dismissing Norine Rakowski's counterclaim for divorce, and (3) disposing of the jointly owned business property, was signed on June 2, 1981, a month before the instant action to impress a constructive trust was commenced.

In connection with the instant action, plaintiff moved for a preliminary injunction, and defendant Barry Rakowski cross-moved to dismiss the action upon the ground of collateral estoppel in that the instant matter was merely "an offshoot" of the matrimonial action previously determined.

In denying the cross motion of defendant Barry Rakowski to dismiss the action, Special Term (Linakis, J.), by order dated September 23, 1981, stated: "A review of the papers indicates that the issues concerning the cooperative shares were not adjudicated in the matrimonial proceeding so as to cause this present proceeding to be barred".

At the ensuing trial on the merits of the instant action, testimony was adduced which indicated that (1) plaintiff had left the apartment permanently in March 1980 due to marital difficulties, and (2) she was aware at that time that the owners of the apartment building in which she and defendant Barry Rakowski resided were contemplating conversion to cooperative ownership. This knowledge was obtained by virtue of her receipt in November 1979 of a "red herring" prospectus, i.e., a notice to the tenants that a plan for the conversion of the property to cooperative ownership had been filed with the Attorney-General for his approval. At that time both she and defendant Rakowski discussed the possibility of buying the apartment and agreed that it would be a good idea. Testimony was also adduced which established that (1) the conversion plan was approved for filing by the Attorney-General on October 17, 1980, and presented by hand delivery "to each of the tenants who were in occupancy in the building" two days later, and (2) the owner of the building received an application and deposit in the amount of $1,000 from defendant Rakowski on February 23, 1981 for the purchase of the apartment. Finally, the testimony indicated that plaintiff was aware, during the trial of the matrimonial action on April 10, 1981, that the marital apartment "was going co-op".

After the conclusion of the trial testimony, the court afforded counsel the opportunity to submit posttrial memoranda. Apparently, defendant Rakowski's counsel, after the conclusion of the trial, again raised the issue of collateral estoppel that had been previously raised in the cross motion to dismiss, and rejected in the order of Special Term.

Trial Term, in its decision, also rejected defendant Rakowski's argument regarding collateral estoppel, holding: "Turning first to defendant Barry Rakowski's contention that this action is barred by collateral estoppel, the court determines the argument to be without merit. While, concededly, the court in any action for divorce 'may (1) determine any question as to the title to property arising between the parties.' (Domestic Relations Law, § 234 [1]), the language is permissive, not mandatory (*Perry v Perry,* 79 AD2d 851; *Trecot v Taxter,* 69 Misc 2d 248). Since the matter of title to the apartment was not placed in issue in the divorce action, the present proceeding is not barred."

However, with respect to the merits of plaintiff's action to impress a constructive trust on the shares of the cooperative apartment, Trial Term held in favor of the defendants.

■ Preliminarily, we note that both Special Term and Trial Term erred in rejecting defendant Rakowski's argument that the instant action was barred.

Clearly, the record herein supports the conclusion that the instant action was commenced in order "to determine title issues that could have been, but were not, raised in the matrimonial action" (Scheinkman, 1982 Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 234, 1984-1985 Pocket Part, p 39). In this particular setting, this court held in *Marinelli v Marinelli* (88 AD2d 635) that a separate action to determine title issues which could have been, but were not raised in a prior matrimonial action, will be barred. In *Marinelli (supra)*, a matrimonial action was commenced in 1978, proceeded to trial and in April 1981 a judgment of divorce was entered. During the pendency of the matrimonial action, i.e., in January 1981, the plaintiff wife instituted a separate action to, *inter alia,* impress a constructive trust on one half of the family car and one half of the proceeds of certain life insurance and annuity policies surrendered by the defendant husband. By order entered May 22, 1981, Special Term dismissed the complaint in the latter action on the ground that the causes of action were barred by res judicata because they could have been litigated in the matrimonial action. In affirming the order of Special Term, this court stated (*Marinelli v Marinelli, supra,* at p 636): "We have reviewed the records in this matter and in the matrimonial action. There is no reason why the issues raised in the instant action could not have been raised by the wife in that action. As Special Term concluded: 'Here, the parties had the opportunity to have *all* of their marital disputes resolved as an incident to, and as part of, their divorce action. That was the appropriate forum within which to properly adjudicate the marital property and financial matters of the type being raised herein, and the parties had the right to expect that any such matters not there considered were not going to be litigated. The [wife's] subsequent commencement of this separate unrelated plenary action outside of the matrimonial framework seriously impairs this right and cannot be sanctioned.' (Cf. *Smith v Russell Sage Coll.,* 54 NY2d 185.)"

In view of the fact that the issue of title to the cooperative apartment raised in the instant action could have been, but was not, raised in the prior matrimonial action involving the Rakowskis, the holding of *Marinelli v Marinelli (supra)* mandates a dismissal of the instant action. To the extent that a prior decision of this court in *Shamsee v Shamsee* (77 AD2d 618, 619) may be read as holding, contrary to *Marinelli v Marinelli,* that a separate action can be maintained to adjudicate an issue of title, even though the issue of title could have been, but was not, raised in the prior matrimonial action, it is not to be followed.[*]

---

[*] It is unclear from the decision in *Shamsee v Shamsee* (77 AD2d 618) whether the party who was seeking an adjudication as to title of personalty in

The case of *Foster v Foster* (99 AD2d 284), decided by this court after *Marinelli v Marinelli* (*supra*), does not compel a different result. In *Foster v Foster* (*supra*), the defendant husband was gainfully employed during the divorce trial. Subsequent to the trial, but prior to the issuance of the court's decision, defendant was convicted of manslaughter in the first degree and sentenced to a term of 5 to 15 years' imprisonment. The trial court, which was unaware of defendant's change in circumstances, ordered defendant to pay plaintiff $200 per week child support and plaintiff was awarded exclusive possession of the marital premises.

Subsequent to the entry of the divorce judgment, defendant moved "to modify the judgment by reducing his child support obligation to zero until his release" (*Foster v Foster, supra,* at p 285). In an attempt to ameliorate the obvious adverse effect of defendant's changed circumstances (which first became known after the divorce judgment was signed) upon her child support payments, plaintiff cross-moved for an order transferring title of the marital premises into her name alone. It is within this particular setting that the court's statement in *Foster v Foster* (*supra,* at p 286), that "once a final judgment is entered in the matrimonial action, all questions of title, as opposed to possession, should be adjudicated in a separate plenary action" can be understood. The facts in *Foster v Foster* stand in stark contrast to those at bar, where the issue of title to the marital apartment could have been, but was not, raised during the matrimonial action.

We are also cognizant that the Appellate Divisions in the Third and Fourth Departments have apparently held contrary to *Marinelli v Marinelli* (*supra*) (*see, Weichold v Weichold,* 54 AD2d 1015; *Perry v Perry,* 79 AD2d 851). An examination of those two decisions indicates that they were largely based on the theory that the language of Domestic Relations Law § 234, "being permissive rather than mandatory, does not preclude a separate action" (*Perry v Perry, supra,* at p 851). We respectfully disagree with the holdings in *Weichold v Weichold* (*supra*) and *Perry v Perry* (*supra*). In our view, the permissive language of Domestic Relations Law § 234 applies only to the court and not to the litigants, i.e., the issue of title, if raised, need not be decided by the matrimonial court and can be raised again in a separate plenary action. However, the language of Domestic Relations Law § 234 does not allow litigants to endlessly commence separate actions to adjudicate issues of title which could have been, but were not, raised in a prior matrimonial action.

the matrimonial residence had in fact raised that issue in the prior matrimonial action. The matrimonial action in *Shamsee v Shamsee* (*supra,* at p 618) resulted in a judgment dated June 9, 1976 which, *inter alia,* provided that

Moreover, even assuming, arguendo, that the instant action could properly be maintained, it is clear that the trial court correctly held in favor of the defendants on the merits. In order to be eligible to purchase the apartment, plaintiff had to be a tenant "in occupancy * * * at the time of the offering" pursuant to the Code of the Real Estate Industry Stabilization Association of New York City, Inc. (Rent Stabilization Code) § 61 (5). The "time of the offering", as that phrase is used in the Rent Stabilization Code, refers to the date that the conversion plan accepted for filing by the Attorney-General is distributed to the tenants, and not the date that the "red herring" prospectus is distributed (*see, Wissner v 15 W. 72nd St. Assoc.*, 87 AD2d 120, *affd* 58 NY2d 645; *Apfelberg v East 56th Plaza,* 78 AD2d 606). On the former date, plaintiff, though a tenant of record, had already manifested an intent to relinquish her rights to the apartment by removing both her person and all of her property from the apartment several months before, and by failing to pay the rent or to make sure that rent was being paid, although obligated to do so, during that period. Therefore, she was not a "tenant in occupancy" as that phrase is used in the Rent Stabilization Code (*cf. Spitalnik v Springer,* 87 AD2d 797, *mod on other grounds* 59 NY2d 112).

Accordingly, the judgment appealed from must be affirmed.

GIBBONS, NIEHOFF and LAWRENCE, JJ., concur.

Judgment of the Supreme Court, Queens County, dated November 10, 1983, affirmed, with costs.

---

" '[N]o award is made as to the * * * granting and division of marital assets' ". If the issue of title was in fact raised in the *Shamsee* matrimonial action, and the court chose to refrain from determining that issue in accordance with the permissive language of Domestic Relations Law § 234 that "the court may * * * determine any question as to the title to property arising between the parties", then the holding in *Shamsee v Shamsee (supra)* could be distinguished from, and reconciled with, the holding in *Marinelli v Marinelli* (88 AD2d 635).