INGRID M. BRAUNSTEIN, Respondent-Appellant, v DAVID C. BRAUNSTEIN, Appellant-Respondent.

Second Department, December 30, 1985

---

## APPEARANCES OF COUNSEL

*McCormack & Phillips* and *Ralph S. Joseph (Ronald A. Phillips* of counsel), for appellant-respondent.

*Ferraro, Rogers, Dranoff, Greenberg, Cody, Goldstein & Miller, P. C. (Martin T. Johnson* of counsel), for respondent-appellant.

## OPINION OF THE COURT

MOLLEN, P. J.

The instant appeals involve postdivorce proceedings instituted after the parties hereto obtained a bilateral divorce decree in the Kingdom of Sweden. The issues presented by the appeals are twofold; the first issue is whether the parties' bilateral foreign divorce decree, which resolved the issues of child custody, child support and spousal maintenance, constitutes a bar to the commencement of an action in New York by the plaintiff wife for an equitable distribution award pursuant to Domestic Relations Law § 236 (B). A second and related issue is whether that portion of the foreign decree which granted custody of the parties' two children to the plaintiff, and which was embodied in a written stipulation by the parties and marked "so ordered" by the Rockland County Family Court, estops the defendant husband from seeking custody in the New York action.

The parties were first wed in Sweden in July 1970. At the time of their marriage, plaintiff was a Swedish national and defendant was a United States citizen. Shortly after their marriage, the couple returned to the United States and were married in a religious ceremony in New York in September 1970. During the 13-year duration of the marriage, the parties resided in the United States; plaintiff never became a citizen of this country but held "green card" status throughout the marriage. The parties had two children: Michael, born on April 3, 1971 and Hannah Rebecca, born on September 10, 1974. Both children were born in the United States.

In June 1983, plaintiff and the parties' two children traveled to Sweden for the stated purpose of visiting plaintiff's parents as they had several times before. Shortly after plaintiff and the children arrived in Sweden, plaintiff informed

defendant of her plans for remaining in Sweden and instituting a divorce action in Stockholm City Court. Defendant immediately traveled to Sweden, retained Swedish counsel and appeared in the Stockholm court to defend the action.

The certified transcript of the proceedings in the Swedish court reveals that in addition to seeking a divorce, plaintiff sought custody of and support for the parties' children as well as spousal maintenance. While defendant acceded to the divorce, he contested the issue of custody and spousal maintenance. By decision dated August 13, 1983, the Stockholm City Court granted the parties a divorce, awarded defendant custody of the children and ordered plaintiff to pay a fixed sum for child "maintenance". Plaintiff's request for spousal maintenance was denied. Plaintiff appealed from that decision. In September 1983, the Swedish appellate court reversed the city court's ruling to the extent that plaintiff was awarded custody of the parties' children and defendant was directed to pay child "maintenance" in the amount of $100 per month for each child. The appellate court also set forth a visitation schedule for the children's visits with defendant in the United States. The Swedish divorce decree became final on February 16, 1984.

During the pendency of the divorce action and before the foreign decree was finalized, the parties' children were residing in Sweden. Prior to the children's scheduled visitation with defendant in the United States, plaintiff's Swedish counsel informed defendant that plaintiff would not permit the children to travel to the United States unless there was a "guarantee", presumably in the form of a New York court order, that the children would be returned to Sweden. As a result, the parties executed a written stipulation of custody dated March 14, 1984 which provided, in pertinent part:

"NOW THEREFORE, in consideration of the mutual promises contained herein, the parties stipulate and agree as follows:

"1. That in accordance with the Judgment of Divorce issued from the Stockholm City Court, Division 3, Stockholm, Sweden on February 16th, 1984 * * * which court assumed jurisdiction of this action, to which the parties assented, and which provided that the WIFE shall have custody of the infant children of the parties, to wit: Michael Louis, born April 3rd, 1971 and Hanna Rebecca, born September 10th, 1974 * * *

"*The HUSBAND shall submit to the jurisdiction of the Courts of the State of New York,* and the County of Rockland, with

respect to all matters concerning the custody of the infant children of the marriage.

"4. *The parties further agree to be bound by the provisions of the Uniform Child Custody Jurisdiction Act.*

"5. The parties and their respective attorneys specifically request that the Family Court of the County of Rockland, so ORDER, the aforesaid Stipulation, and that the aforesaid Stipulation be deemed to have the full force and effect of an Order of the custody from the Family Court of the County of Rockland, State of New York" (emphasis supplied).

The executed stipulation, which also incorporated the visitation schedule set forth in the Swedish decree, was submitted to the Rockland County Family Court and marked "so ordered" by Judge Stanger on March 15, 1984.

In or about May 1984, plaintiff commenced this action in the Supreme Court, Rockland County, to compel equitable distribution of the parties' marital property pursuant to Domestic Relations Law § 236 (B). Plaintiff also sought maintenance and child support. In his verified answer, defendant set forth several affirmative defenses. Essentially, defendant asserted that Domestic Relations Law § 236 (B) does not permit the commencement of an action for equitable distribution in a "foreign bilateral divorce situation, as in the cause at bar". Defendant also maintained that plaintiff was barred from proceeding with her cause for equitable distribution, spousal maintenance and child support under the doctrines of collateral estoppel and res judicata. In addition to the aforesaid affirmative defenses, defendant counterclaimed for custody of the parties' two children.

In June 1984, while the instant action was pending, the parties' two children arrived in New York for an eight-week scheduled visitation period with defendant. Shortly after the children's arrival, defendant moved by order to show cause seeking, *inter alia,* to restrain plaintiff from removing the children from Rockland County and awarding him temporary custody pending a determination of the matter of custody. Defendant also sought dismissal of the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action.

Special Term granted defendant's motion to dismiss the complaint only to the extent, *inter alia,* of striking the demands for the relief of maintenance and child support. Defendant's request for temporary custody and related injunctive relief was denied. In this respect, Special Term stated, "[t]he

Swedish courts had personal jurisdiction over both parties, and their determinations as to child custody, child support, and spousal maintenance bind both parties pursuant to the principles of comity and collateral estoppel". With regard to plaintiff's cause of action for equitable distribution, however, Special Term determined that this requested postdivorce relief was permitted under Domestic Relations Law § 236 (B) (2) and (5) (a) following plaintiff's procurement of a foreign bilateral divorce decree. In addition, Special Term noted that the doctrines of collateral estoppel and res judicata did not preclude the seeking of such relief "since the Swedish courts made no ruling as to the distribution of marital and separate property". There should be an affirmance of Special Term's determination on these issues.

We begin with an analysis of the issue as to whether the parties' foreign divorce decree bars the commencement of an action in New York by plaintiff for equitable distribution under Domestic Relations Law § 236 (B). Of particular relevance to this issue are subdivisions (2) and (5) (a) of that section which provides in pertinent part:

"(2) Matrimonial actions. Except as provided in subdivision five of this part, the provisions of this part shall be applicable to * * * proceedings to obtain maintenance or a distribution of marital property following a foreign judgment of divorce, commenced on and after the effective date of this part * * *

"(5) Disposition of property in certain matrimonial actions. a. Except where the parties have provided in an agreement for the disposition of their property pursuant to subdivision three of this part, the court * * * in proceedings to obtain a distribution of marital property following a foreign judgment of divorce, shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment".

■ This rather specific statutory language leaves little doubt that a spouse who is the subject of a divorce decree obtained from another jurisdiction, which decree does not resolve the issue of property distribution, is permitted to seek such a resolution in the New York courts. Significantly, the statute no longer requires that the spouse commencing the New York postdivorce proceeding establish that he or she was not subject to the personal jurisdiction in the foreign divorce action. Nor does the statute limit access to postdivorce relief of either maintenance or equitable distribution to the spouse who was

the nonmoving party in the divorce action. In this respect, part (B) of section 236 is much more liberal than part (A) which affords the needy spouse protection as to financial matters only upon a finding that "jurisdiction over the person" of that spouse has not been obtained in the foreign jurisdiction (see, Domestic Relations Law § 236 [A] [1]; *Wolstencroft v Wolstencroft*, NYLJ, Aug. 21, 1981, p 16, col 4). The broad statutory language in part (B) has the desirable effect of allowing for the resolution by the parties of the economic incidents of divorce, particularly property distribution issues, irrespective of whether or not the moving party was an "innocent" spouse in the divorce proceeding. As Special Term reasoned, "[t]he function of the statute is not to aid an 'innocent' spouse to obtain a property distribution when a 'non-innocent' spouse has obtained an out-of-state divorce, but to allow both parties to resolve property questions which would otherwise remain in limbo, causing grief to the parties as well as future purchasers or transferees of the property". Thus, to the extent that defendant urges this court to dismiss plaintiff's cause of action for equitable distribution on the basis that she was not an "innocent" spouse in the foreign divorce action, his argument fails to recognize the explicit and liberal terms of the statute as well as the obvious legislative objective sought to be achieved therein.

It is essential to note that while the statutory framework of Domestic Relations Law § 236 (B) permits a party to seek relief in the form of equitable distribution or maintenance after obtaining a foreign bilateral divorce decree, it is possible that such relief may be barred under the principles of collateral estoppel and res judicata (see, Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:3, 1977-1985 Supp Pamph, p 200; see also, 2 Foster, Freed, Brandes, Law and the Family [1986 Cumm Supp] § 33:3, at 960). The criteria for application of collateral estoppel have recently been reiterated by the Court of Appeals in *Schultz v Boy Scouts of Am.* (65 NY2d 189, 204): "[f] *or collateral estoppel to apply * * * three criteria must be met: (1) the issue must actually have been litigated and determined by a valid and final judgment in a separate action,* (2) that determination must have been essential to the judgment and (3) either the party to be precluded had a full and fair opportunity to litigate the issue in the prior proceeding or other circumstances do not justify affording him an opportunity to relitigate it (see, Restatement [Second] of Judgments

§§ 27, 29; *State v Gonzalez, supra,* at pp 188-192, at pp 1132-1133; *see also, Koch v Consolidated Edison Co.,* 62 NY2d 548, 554-555)" (emphasis added).

█ In the case at bar, the transcript of the Swedish proceedings reflects that the issue of the equitable distribution of the parties' marital property was never raised by either party nor did the court resolve or allude to that issue in the final divorce decree. Thus, the principle of collateral estoppel would not apply to preclude the granting of a distributive award to plaintiff. In contrast, we note parenthetically that Special Term properly determined that plaintiff's causes of action for spousal maintenance and child support were barred on collateral estoppel grounds since those issues were fully litigated by the parties in the divorce action and her request for spousal maintenance was specifically denied by the Swedish court *(see, Frantz v Frantz,* 92 AD2d 950).

The application of the doctrine of res judicata yields a similar result. Res judicata serves to preclude the renewal of issues actually litigated and resolved in a prior proceeding as well as claims for different relief which arise out of the same "factual grouping" or "transaction", and which should have or could have been resolved in the prior proceeding. This pragmatic transactional analysis approach of the res judicata doctrine arises out of an observation that "a claim or cause of action [is] 'coterminous with the transaction regardless of the number of substantive theories or variant forms of relief * * * available to the plaintiff' (Restatement, Judgments 2d [Tent Draft No. 4, 1978], § 61, Comment *a)" (Smith v Russell Sage Coll.,* 54 NY2d 185, 192; *see also, O'Brien v City of Syracuse,* 54 NY2d 353, 357). In order for res judicata to apply, however, the foundational facts must be related in " 'time, space, origin, or motivation [as well as] form a convenient trial unit' " and it must be established that the " 'treatment [of the foundational facts] as a unit conforms to the parties' expectations' " *(Smith v Russell Sage Coll.,* 54 NY2d 185, 192-193, *supra,* quoting from Restatement [Second] of Judgments [Tent Draft No. 1] § 61).

In the case at bar, there exists a dispute between the parties as to whether the Swedish court was empowered under prevailing Swedish law to grant a distributive award as incidental relief to the divorce action. Based on the record before us, we conclude that plaintiff's equitable distribution cause of action is not barred under the transactional analysis approach of the res judicata doctrine since the issue of property distri-

bution was not addressed in the prior matrimonial action nor does it appear to this court that the parties sought such a resolution by the foreign tribunal. In this respect, the instant action is distinguishable from the case of *Rakowski v Rakowski* (109 AD2d 1) in which the plaintiff wife's postdivorce action for equitable distribution was dismissed on the grounds of res judicata. In *Rakowski,* the parties had obtained a divorce judgment which, *inter alia,* provided for the distribution of their jointly owned business. One month after the final divorce judgment was rendered, the plaintiff wife instituted an action against the defendant husband seeking to impose a constructive trust upon shares of a cooperative apartment on the basis that the shares constituted marital property. This court, reversing Special Term, concluded that the plaintiff wife's action was barred under the principles of res judicata and collateral estoppel since "the issue of title to the cooperative apartment raised in the instant action could have been, but was not, raised in the prior matrimonial action" *(supra,* at p 5). In reaching this result the court noted that litigants in a matrimonial action should not be subject to endless separate actions seeking to adjudicate issues of title *(see also, Scattoreggio v Scattoreggio,* 115 AD2d 531; *Marinelli v Marinelli,* 88 AD2d 635). In the case at bar, unlike *Rakowski v Rakowski (supra)* and its companion cases, the divorce judgment rendered by the Swedish court did not consider or address issues concerning the proper distribution of the parties' property. Moreover, the policy behind the *Rakowski* holding does not apply herein since defendant is not being subject to "endless separate actions" seeking to adjudicate property rights or issues of title. Accordingly, Special Term properly denied that portion of defendant's motion seeking to strike plaintiff's equitable distribution cause of action.

We now turn to a review of defendant's claim for custody. Defendant maintains that New York is the "home state" (Domestic Relations Law § 75-c [5]) of the parties' children for purposes of the Uniform Child Custody Jurisdiction Act (Domestic Relations Law § 75-a *et seq.)* by virtue of the parties' stipulation which was marked "so ordered" by the Family Court. The effect of this stipulation, in defendant's view, is to empower the New York courts to make a de novo determination of the custody issue without regard to the terms of the Swedish decree. We disagree.

The obvious thrust of the parties' stipulation was to insure

that the portion of the foreign decree dealing with custody of the children would be recognized by the New York courts pursuant to the Uniform Child Custody Jurisdiction Act (Domestic Relations Law § 75-a *et seq.)* and would, accordingly, be enforceable in this jurisdiction. To this end, defendant specifically submitted himself to the jurisdiction of the Rockland County Family Court, and the parties agreed "to be bound by the provisions of the Uniform Child Custody Jurisdiction Act". The provisions of that act dealing with recognition of foreign custody decrees provides as follows: "The general policies of this article extend to the international area. The provisions of this article relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons" (Domestic Relations Law § 75-w).

The relevant statutory sections dealing with the enforcement of custody decrees from other States provide:

"1. *If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction* under jurisdictional prerequisites substantially in accordance with this article *or has declined to assume jurisdiction to modify the decree* and (2) the court of this state has jurisdiction.

"2. *If a court of this state is authorized* under subdivision one of this section and section seventy-five-i of this article *to modify a custody decree of another state, it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with section seventy-five-v of this article"* (Domestic Relations Law § 75-o; emphasis added).

■ Herein, the parties' written stipulation vested the New York courts with jurisdiction as to custody matters insofar as insuring that the terms of the Swedish decree would be adhered to and enforced in this State. It is significant to note, however, that there has been no revocation or relinquishment of the jurisdiction of the Swedish courts, which still retained concurrent jurisdiction of this case by virtue of the children's residence in that country. Nor does it appear from the record that the Swedish courts have declined to exercise such jurisdiction; rather, the contrary is true. Thus, the New York

courts are not authorized to modify the foreign custody decree since the conditions of Domestic Relations Law § 75-*o* (1) have not been met *(see, Ruff v Ruff,* 98 Misc 2d 934; *Hricko v Stewart,* 99 Misc 2d 266). Even if we were to assume that the New York courts had the authority to modify the Swedish decree insofar as it deals with custody, defendant has failed to make any allegations as to changed circumstances which would warrant modification of the custody provisions of that decree. In this vein, it is emphasized that, prior to the commencement of the instant action, the issue of custody had recently been vigorously contested by the parties in the Swedish proceedings. In addition, it is noted that our conclusion is in accordance with the clear legislative objective of the Uniform Child Custody Jurisdiction Act (Domestic Relations Law § 75-a *et seq.)* which seeks to discourage the continued controversies and subsequent relitigation of custody decisions rendered by foreign tribunals of competent jurisdiction *(see, Hricko v Stewart,* 99 Misc 2d 266, 268, *supra;* Governor's approval message of L 1977, ch 493, 1977 McKinney's Session Laws of NY, at 2514; memorandum of Office of Court Administration on L 1977, ch 493, 1977 McKinney's Session Laws of NY, at 2623). Accordingly, we determine that defendant's request for temporary custody and related injunctive relief was properly denied by Special Term.

Moreover, since the issue of custody had been litigated previously, defendant's counterclaim for such relief must fail absent showings that the Swedish courts have relinquished their jurisdiction over the matter and that changed circumstances exist to warrant modification of the custody determination. In view of the foregoing, Special Term's order should be modified to the extent that its direction that the parties and their two children submit to forensic and custody evaluations pursuant to Family Court Act § 251 should be deleted.

In conclusion, we note that plaintiff's cause of action for child support was properly dismissed by Special Term on collateral estoppel grounds since the issue was specifically dealt with in the Swedish decree which awarded the sum of $100 per month per child. Given the absence of any allegations of changed circumstances which would warrant an increase in the child support award, we do not express an opinion as to whether New York courts would be empowered to grant such relief or whether plaintiff would be required to seek such relief in the courts of Sweden.

THOMPSON, O'CONNOR and RUBIN, JJ., concur.

Order of the Supreme Court, Rockland County, entered August 22, 1984, modified, by deleting the provision directing the parties and their children to submit to forensic and custody evaluations pursuant to Family Court Act § 251 and substituting therefor a provision denying that branch of defendant's motion. As so modified, order affirmed insofar as appealed from, with costs payable by defendant.

Justice Thompson has been substituted for former Justice, now Judge Titone *(see,* Judiciary Law § 21; *Wittleder v Citizens' Elec. Illuminating Co.,* 47 App Div 543).