**In re Ronald R. BENJAMIN, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 94–BG–1318.**

District of Columbia Court of Appeals.

Submitted May 14, 1996.
Decided July 31, 1997.

---

Marya C. Young, Binghamton, NY, was on the brief for respondent.

Leonard H. Becker, Bar Counsel, and Michael S. Frisch, Senior Assistant Bar Counsel, were on the brief for petitioner, the Office of Bar Counsel.

Before TERRY and FARRELL, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

Respondent Benjamin, a member of the bars of New York and the District of Columbia, was censured by the New York Supreme Court, Appellate Division, Third Department, for two violations of Disciplinary Rule (DR) 1–102(A)(4) of the New York Code of Professional Responsibility. *In re Benjamin,* 205 A.D.2d 978, 613 N.Y.S.2d 960, *appeal dismissed,* 84 N.Y.2d 863, 642 N.E.2d 327, 618 N.Y.S.2d 8 (1994). Upon receipt of the Third Department's order, this court referred the matter to the Board on Professional Responsibility ("the Board") for a reciprocal disciplinary proceeding. The Board recommended an identical sanction, and respondent filed an exception. We agree with the Board's recommendation and order that respondent be publicly censured.

## I

Respondent Benjamin practices law in Binghamton, New York. In July 1992 a disciplinary proceeding against him was begun in New York after Justice Robert E. Fischer of

the New York Supreme Court filed a complaint. Mr. Benjamin had appeared in various matters before Justice Fischer and, in one case, had requested that the justice recuse himself.[1] Shortly thereafter, Mr. Benjamin wrote a letter to Justice Fischer asking him to recuse himself in all cases in which Benjamin appeared as counsel. According to the letter, this request was based on information from another attorney that the justice had said he had to have a court reporter present during proceedings involving Mr. Benjamin because of Benjamin's "inability to know and relate the truth." Justice Fischer agreed to recuse himself in all pending matters in which Mr. Benjamin appeared as counsel, but also sent a letter to the New York Committee on Professional Standards reporting four instances of what the justice "deemed to be unprofessional [conduct]."

After Mr. Benjamin refused to accept a private admonition, the Committee on Professional Standards filed a "petition of charges and specifications" with the Third Department, alleging that Mr. Benjamin had attempted to mislead and deceive the court and opposing counsel in three separate cases, in violation of DR 1–102(A)(4).[2] In the fall of 1993 three days of hearings were held before another New York judge who had been appointed as a referee. Mr. Benjamin participated in those hearings and was represented by counsel. After the hearings ended, the referee made detailed findings of fact and concluded that Mr. Benjamin's actions, "taken together, demonstrate a course of conduct on the part of Respondent intended to mislead, misguide, misinform, deceive, circumvent and confuse Court and counsel." The referee's report was confirmed by the Third Department as to two of the three specifications of misconduct, and Mr. Benjamin was publicly censured.

The two violations for which Mr. Benjamin was censured arose out of two different cases. In the first, Mr. Benjamin represented the plaintiff husband in a divorce proceeding. The defendant wife filed a motion seeking various forms of relief, including an order awarding her exclusive occupancy of the marital home. In an unrecorded proceeding before Justice Fischer, Mr. Benjamin represented to the court that "the issues involved had been fully resolved in the Family Court," so that the wife's motion was barred by *res judicata.* Justice Fischer scheduled the matter for an evidentiary hearing and specifically directed Mr. Benjamin, in writing, to produce any Family Court records by a specified date. Benjamin failed to do so, but continued at the hearing to press a claim of *res judicata* or collateral estoppel. The orders that Mr. Benjamin did produce at the hearing showed only that the Family Court had once granted a petition by the wife for an order of protection from the husband, but that this protection provision was dropped from a later order. In light of this evidence, the Third Department agreed with the referee and found that Mr. Benjamin "attempted to mislead [the] trial court, by asserting a specious res judicata or collateral estoppel defense."

In the second matter, a wrongful death action, Mr. Benjamin represented the decedent's estate. He initially sued the county sheriff, claiming that the decedent had died as a result of inadequate and delayed rescue efforts following a truck accident. He later moved to amend the complaint by adding eight new defendants. Justice Fischer granted the motion and, in a written order, directed that service of the amended complaint be made within twenty days from the date of the order. Mr. Benjamin, however, did not serve the amended complaint or seek additional time to do so. Several months later Mr. Benjamin sought leave to file a second amended complaint. To excuse his failure to serve the first amended complaint, he filed an affidavit in which he stated:

> Your deponent respectfully submits that the reason the Amended Complaint was not timely filed was that the parties had agreed among themselves to continue the discovery to develop additional facts so

---

1. Mr. Benjamin made this request after the justice hired a new law clerk who had previously appeared as opposing counsel in the pending case.

2. Under New York's Code of Professional Responsibility, DR 1–102(A)(4) prohibits a lawyer from engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation."

that when the Amended Complaint was served it would not need further amendments.

After counsel for the defendants denied the existence of such an agreement, Mr. Benjamin admitted on the record that there was no "formal" or "express" agreement.[3] On these facts, the Third Department found that Mr. Benjamin had attempted to mislead the trial court "by inaccurately asserting in a sworn affidavit that he had failed to timely serve an amended complaint ... because the parties had agreed among themselves to continue discovery so that the amended complaint, when served, would not require additional amendments...."

Despite Mr. Benjamin's prior disciplinary record, see In re Benjamin, 129 A.D.2d 886, 514 N.Y.S.2d 526, appeal dismissed, 70 N.Y.2d 666, 512 N.E.2d 542, 518 N.Y.S.2d 959 (1987), resulting in reciprocal discipline in this jurisdiction, In re Benjamin, No. 87–1030 (D.C. May 17, 1988),[4] the Third Department ordered only a public censure. While the court condemned Mr. Benjamin's actions and acknowledged his prior record, it did not find his misconduct, viewed in context, to be "so egregious as to warrant suspension or disbarment."

Upon receipt of a certified copy of the Third Department's order, we referred the matter to our Board on Professional Responsibility for a reciprocal disciplinary proceeding. After reviewing the New York record, the Board concluded that identical discipline should be imposed. The Board ruled first that the misconduct found in New York would also constitute misconduct in the Dis-

trict of Columbia. It then rejected Mr. Benjamin's assertion that the referee's conclusions, which formed the basis of the Third Department's censure order, were not supported by the record.[5] In so ruling, the Board first addressed the fact that New York uses a lower standard of proof in attorney discipline cases than the District of Columbia.[6] Despite this procedural disparity, the Board reasoned that a " 'fair preponderance of the evidence' standard in an attorney discipline proceeding does not, on its face, present 'such an infirmity of proof' ... [or] such 'grave injustice' " as to preclude reciprocal discipline.

Turning to the merits, the Board found that Mr. Benjamin had failed to show an infirmity of proof or grave injustice by clear and convincing evidence. According to the Board, Mr. Benjamin's arguments "reduce[d] to four basic points":

1. The referee and Appellate Division erred in concluding that Respondent urged res judicata or collateral estoppel on the marital residence issue in the divorce case. Respondent contends that his argument was based only on the physical harassment issue, and was supported by New York law establishing that a Family Court decision on spousal abuse or harassment has preclusive effect in other New York civil proceedings.

2. The referee and Appellate Division incorrectly concluded that Respondent admitted that there was no agreement among counsel to delay service of the First Amended complaint in the wrongful death case. Respondent only admitted that

---

3. In mitigation, Mr. Benjamin offered evidence that it was common practice in Broome County (where Binghamton is located) for attorneys to conduct informal discovery. This evidence was disregarded by the referee.

4. In the 1988 reciprocal disciplinary proceeding, this court suspended Mr. Benjamin from the practice of law in the District of Columbia for six months because of three violations: (1) conflict of interest, (2) instituting suit and threatening action unwarranted under existing law, and (3) attempting to withdraw from representation without court permission.

5. Mr. Benjamin had asserted that the alleged misrepresentations "either were misinterpreted by [Justice Fischer] and New York disciplinary

authorities, or were reasonable inferences respondent drew from accurate facts."

6. New York applies a "fair preponderance of the evidence" standard. See, e.g., In re Capoccia, 59 N.Y.2d 549, 453 N.E.2d 497, 466 N.Y.S.2d 268 (1983); In re Friedman, 196 A.D.2d 280, 609 N.Y.S.2d 578, appeal dismissed, 83 N.Y.2d 888, 635 N.E.2d 295, 613 N.Y.S.2d 126, cert. denied, 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 34 (1994). The District of Columbia, like most other jurisdictions, requires proof of attorney misconduct by "clear and convincing evidence." Board on Professional Responsibility Rule 11.4.

there was no "formal" or "express" agreement.

3. Disciplinary action based on the statements Respondent made in these instances violates his First Amendment rights, and will have a chilling effect on advocacy for clients.

4. The complaining Justice, according to Respondent, filed the complaint in retaliation for Respondent's recusal motion.

Responding to Mr. Benjamin's first argument, the Board pointed out that the New York authorities did not discipline Mr. Benjamin because his legal arguments were weak, but because of "his misstatement of the *fact* of what the Family Court had done." As to his second point, the Board said that "whether Respondent misstated the facts does not rest solely on whether the agreement was 'express' or 'formal.'" Rather, "the referee concluded that it simply 'was not true' that the parties had agreed among themselves to continue discovery." The Board accepted this finding, stating that "[t]he evidence available ... show[ed] nothing beyond Respondent's own claim to support the notion that there was any such agreement." [7]

Having rejected Mr. Benjamin's first two contentions, the Board concluded that his First Amendment claim resolved itself. The Board explained:

There is no First Amendment right to misrepresent facts to courts. We have weighed this argument with care, however, because discipline based on misrepresentations made in litigation could have the effect Respondent fears. Many contested cases are disputes over conflicting facts. It does not follow that the attorney who represents the losing side has misrepresented facts. The dilemma may be even greater where discipline is based on legal arguments alleged to be "misstatements." The law grows and evolves, often at the instigation of attorneys making creative arguments that extend existing precedents. This is not such a case.

Finally, the Board determined that "the New York process purged any 'retaliatory' motive in the filing of the complaint." The referee, as an independent fact-finder, "heard the testimony of the complaining Justice and had an opportunity to weigh its credibility." The Board also noted that the Third Department had found only two instances of misconduct even though the justice's complaint contained four specifications.

## II

■ Under D.C. Bar Rule XI, § 11(c), reciprocal discipline "shall be imposed" unless the attorney demonstrates by clear and convincing evidence that:

1. The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

2. There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

3. The imposition of the same discipline by the Court would result in grave injustice; or

4. The misconduct established warrants substantially different discipline in the District of Columbia; or

5. The misconduct elsewhere does not constitute misconduct in the District of Columbia.

Absent a showing by Mr. Benjamin that his case falls within one of these five exceptions, there is "a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Zilberberg,* 612 A.2d 832, 834 (D.C.1992) (citation omitted). Mr. Benjamin now argues against reciprocal discipline on three grounds: (1) that there was an infirmity of proof in the New York proceeding; (2) that, given this infirmity of proof, the imposition of reciprocal discipline would re-

---

**7.** With respect to both charges of misrepresentation, the Board also wrote:

Respondent made arguments to New York authorities that were plausible, but those authorities found to the contrary. His argument that

a finder of fact *could* have viewed the facts his way and found that the statements were not misrepresentations does not persuade us to do so. [Emphasis in original.]

sult in grave injustice; and (3) that the misconduct found in New York would not constitute misconduct in the District of Columbia. We reject all three arguments.

Mr. Benjamin first contends that the evidence presented to the Third Department was insufficient to establish misconduct because it did not show any misstatement of material facts. Instead, the record shows, in his opinion, that he advanced a plausible collateral estoppel defense in the divorce proceeding, and that in the wrongful death action he reasonably believed that opposing counsel had agreed to continue informal discovery. Thus Mr. Benjamin maintains that the referee, the Third Department, and the Board failed to evaluate the evidence properly in determining that misconduct occurred. In the absence of clear and convincing evidence to support these contentions, we hold that they are baseless.

■ Preliminarily, we note that the difference in evidentiary standards between New York and the District of Columbia in disciplinary cases does not, on its face, establish an infirmity of proof. Bar Counsel states in his brief that such a difference "might give rise to a legitimate issue" under Rule XI, § 11(c)(2), in certain contexts, such as "where the respondent attorney mounts a substantial defense on the merits or the disciplining court's findings turn upon closely contested issues of credibility." We neither accept nor reject Bar Counsel's assessment because this case does not require us to decide the point. If the issue ever presents itself in a future case, we can decide it then, presumably after full briefing and argument.

■ In New York, unlike most states, misconduct must be proven only by a fair preponderance of the evidence rather than by clear and convincing evidence. See note 6, *supra.* New York's rationale for adopting the lower standard of proof in disciplinary proceedings is that a clear and convincing standard is required only in cases involving "the denial of personal or liberty rights." *In re Capoccia, supra* note 6, 59 N.Y.2d at 553, 453 N.E.2d at 499, 466 N.Y.S.2d at 269 (citations omitted); *see also Fedorenko v. United States,* 449 U.S. 490, 505–507, 101 S.Ct. 737, 746–48, 66 L.Ed.2d 686 (1981); *Addington v. Texas,* 441 U.S. 418, 425–433, 99 S.Ct. 1804, 1808–13, 60 L.Ed.2d 323 (1979). However, the privilege of practicing law, once extended, is not a liberty interest or a personal right, but at most is a property right "as to which the higher standard of proof has not been required." *Capoccia,* 59 N.Y.2d at 553, 453 N.E.2d at 499, 466 N.Y.S.2d at 269. Following this principle, the New York courts have held that reliance on a "fair preponderance" standard in attorney disciplinary proceedings does not run afoul of the Due Process Clause of the Constitution. *See id.* at 553, 453 N.E.2d at 498, 466 N.Y.S.2d at 269 (discussing *In re Sutton,* 49 N.Y.2d 799, 403 N.E.2d 467, 426 N.Y.S.2d 1030 (1980)); *see also In re Friedman, supra* note 6, 196 A.D.2d at 293–95, 609 N.Y.S.2d at 586.

■ The District of Columbia, on the other hand, requires that all disciplinary charges brought by Bar Counsel be proved by clear and convincing evidence. *See* Board on Professional Responsibility Rule 11.4. But this distinction, by itself, provides no basis to avoid reciprocal discipline. The decision to apply a higher standard of proof in this jurisdiction, though its origins are somewhat unclear, does not appear to be constitutionally mandated.[8] We have previously held that "[d]isciplinary proceedings are adversary, adjudicatory proceedings," and because they are concerned with property rights, "due process safeguards must be observed." *In re Thorup,* 432 A.2d 1221, 1225 (D.C.1981). Like the New York courts, we believe that

---

8. Because "disciplinary proceedings are quasi-criminal in nature," we have held that "an attorney who is the subject of such proceedings is entitled to procedural due process safeguards." *In re Williams,* 464 A.2d 115, 118–119 (D.C. 1983). But it is equally clear that, given the *sui generis* nature of these proceedings, attorneys are not afforded all of the protections which are extended to criminal defendants. *See, e.g., Mississippi State Bar v. Young,* 509 So.2d 210, 212– 213 & n. 1 (Miss.1987) (discussing civil and criminal characteristics of disciplinary proceedings). In light of this dichotomy, "the burden of proof is likely to be lower than that required for a criminal conviction, although it is often higher than that necessary in a civil suit." Susan R. Martyn, *Lawyer Competence and Lawyer Discipline: Beyond the Bar?,* 69 Geo. L.J. 705, 709 (1981).

high standards of proof are necessary when personal rights or liberty interests, such as those associated with a criminal prosecution, are at stake. But since the potential loss of livelihood through disbarment is more aptly categorized as only a property right, we see no problem in accepting another state's use of a lower standard of proof than our own in reciprocal disciplinary cases. In short, the District of Columbia's decision to use a clear and convincing standard is not constitutionally prescribed, and thus there is no automatic "infirmity of proof" under Rule XI, § 11(c)(2), in a reciprocal disciplinary case where the original jurisdiction applies a standard of proof lower than clear and convincing.

■ There are two additional reasons for rejecting Mr. Benjamin's claim of an infirmity of proof. First, "[o]ur role in reciprocal discipline cases differs from that in disciplinary matters originating in our own jurisdiction." *In re Velasquez*, 507 A.2d 145, 146 (D.C.1986). Under principles of collateral estoppel, in reciprocal discipline cases we generally accept the ruling of the original jurisdiction, even though the underlying sanction may have been based on a different rule of procedure or standard of proof. *See In re Richardson*, 602 A.2d 179, 181 (D.C. 1992) (citing cases); *In re Velasquez, supra*, 507 A.2d at 146. Second, a rule that automatically established an infirmity of proof in those cases in which proof of misconduct in another jurisdiction was by a standard lower than clear and convincing evidence would unfairly insulate attorneys admitted in those jurisdictions from reciprocal discipline. Such a *per se* rule would force us to ignore both the nature of the misconduct (which might be far more serious than in this case) and the proof adduced in the other jurisdiction.

■ Having concluded that New York's use of a preponderance standard does not establish an infirmity of proof, we must still address the merits of Mr. Benjamin's objec-

tions.[9] He contends that the Board and the New York authorities erred because his collateral estoppel defense in the divorce proceeding was not "specious." According to Justice Fischer's testimony, Mr. Benjamin told him at an unrecorded hearing that the issues involved in the divorce matter had been "fully resolved" in the Family Court, and that the defendant wife was precluded from relitigating these issues in the Supreme Court. Benjamin now argues, however, that he was misinterpreted—that he meant only that the issue of physical harassment was resolved in the Family Court, not the issue of who was entitled to live in the marital residence.[10]

■ Mr. Benjamin's argument is untenable. The Board clearly stated that its decision was not based on his "weak legal argument," but rather on his "misstatement of the *fact* of what the Family Court had done." An attorney's misrepresentation need not be transcribed in order to violate the disciplinary rules. *See, e.g., In re Ontell*, 593 A.2d 1038 (D.C.1991) (misrepresentation to client over the telephone); *In re Reback*, 487 A.2d 235 (D.C.1985) (same), *modified as to sanction*, 513 A.2d 226 (D.C.1986) (en banc). While Mr. Benjamin may have urged a narrower scope of preclusion at the unrecorded hearing, the trier of fact credited Justice Fischer's testimony, not the statements of Mr. Benjamin. Moreover, Mr. Benjamin was free to cross-examine the justice on this point and to make the argument he makes now, but he failed to do so. We therefore defer to the referee's findings, as the Board and the Third Department did. Mr. Benjamin's statement in the divorce proceeding, even if technically true, was nonetheless misleading. *Cf. In re Shorter*, 570 A.2d 760, 768 (D.C. 1990) (attorney found to have been "dishonest" for making technically true but misleading statements to a government agent).

---

9. Before us Mr. Benjamin makes the same arguments that he made before the Board, except that he has apparently dropped his claim that Justice Fischer filed the complaint in retaliation for the recusal motion.

10. In support of his position, Mr. Benjamin cites several New York cases dealing with collateral estoppel in domestic relations matters. *See, e.g., Brown v. Keating*, 166 A.D.2d 220, 564 N.Y.S.2d 101 (1990); *Braunstein v. Braunstein*, 114 A.D.2d 46, 497 N.Y.S.2d 58 (1985); *Baranyk v. Baranyk*, 73 A.D.2d 1004, 424 N.Y.S.2d 46 (1980).

■ With regard to the wrongful death action, Mr. Benjamin claims that both the New York authorities and the Board incorrectly concluded that he misstated in an affidavit that he and opposing counsel had agreed to continue informal discovery. According to Mr. Benjamin, it is not misconduct to infer an agreement based on opposing counsel's actions. He therefore maintains that the evidence presented at the hearing clearly showed that there was a plausible explanation for his reasonable inference.

The referee found as a fact, however, that there was no agreement of any kind between Mr. Benjamin and opposing counsel. Benjamin admitted that there was no express agreement, and that he had simply inferred an agreement from opposing counsel's failure to object to informal discovery. But that admission was ultimately irrelevant because, as the Board said, "[t]he referee concluded that it simply 'was not true' that the parties had agreed among themselves to continue discovery." Apart from Mr. Benjamin's statement, there was no evidence to support the assertion that any such agreement existed at all. As the Board explained:

> While opposing counsel apparently cooperated in providing some voluntary discovery, the record shows that before Respondent signed the affidavit, he received a letter from counsel for one group of defendants insisting that an amended complaint be served or the matter dismissed, and terminating further voluntary discovery until Respondent decided how to proceed. The fact that opposing counsel objected in writing to Respondent's procedure supports the referee's conclusion that opposing counsel had not at some earlier time agreed that Respondent could postpone service of an amended complaint while he carried discovery so far that he could avoid future complaint amendments.

■ Mr. Benjamin's third argument is that his constitutional right to free speech was violated by the New York disciplinary action. We reject this argument out of hand because, simply stated, an attorney has no First Amendment right to lie to a court. On this point we agree with the reasoning of the Board, which we have quoted at page 438, *supra*. Even if an attorney's statement of a legal position may be entitled to First Amendment protection, a deliberate misstatement of fact to a court surely is not protected, just as obscenity [11] or "fighting words" [12] are not protected. We know of no case that holds otherwise; indeed, we would be astonished to find one.[13]

■ We may dispose of Mr. Benjamin's last two contentions fairly quickly. Since he perceives a lack of proof of intentional misrepresentation, he argues that reciprocal discipline should not be imposed because it would result in grave injustice. We do not agree. The sanction recommended here, a public censure, is within the range of sanctions that might be imposed in a non-reciprocal case in the District of Columbia involving two instances of misrepresentation. *See, e.g., In re Garner*, 576 A.2d 1356, 1357 (D.C.1990); *In re Hadzi–Antich*, 497 A.2d 1062, 1063 (D.C.1985). If anything, a public censure is at the low end of the spectrum of possible sanctions, given Mr. Benjamin's prior disciplinary record. *See In re Jackson*, 650 A.2d 675, 678–679 (D.C.1994) (noting that sanctions in cases involving dishonesty or misrepresentation have ranged from public censure to a one-year suspension). We conclude that Mr. Benjamin has failed to present clear and convincing evidence of grave injustice.

■ Finally, there is no question that the misconduct found in New York would constitute misconduct in the District of Columbia. Mr. Benjamin contends otherwise on the premise that his so-called "legal arguments" were not misstatements of fact. Once again, Mr. Benjamin's claim is founded

11. *Roth v. United States*, 354 U.S. 476, 481–485, 77 S.Ct. 1304, 1306–1309, 1 L.Ed.2d 1498 (1957).

12. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–572, 62 S.Ct. 766, 768–770, 86 L.Ed. 1031 (1942).

13. Contrary to Mr. Benjamin's contention, *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991), does not stand for the proposition that an attorney's misrepresentations to a court are protected by the First Amendment.

on a fallacy; the Third Department found that his statements were in fact misleading—in other words, that they were misrepresentations—and that finding was supported by the record. Moreover, New York's disciplinary rule for misrepresentation, DR 1–102(A)(4), is identical to our own and has the same substantive effect. *See In re Brown*, 672 A.2d 577, 578–579 (D.C.1996); *In re Richardson, supra*, 602 A.2d at 186; *In re Reiner*, 561 A.2d 479, 482 (D.C.1989); *In re Hudock*, 544 A.2d 707, 709 (D.C.1988). We hold, therefore, that the misconduct found by the Third Department would also constitute misconduct in this jurisdiction.

Because Mr. Benjamin has failed to establish, by clear and convincing evidence, that any of the exceptions set forth in Rule XI, § 11(c) apply to his case, it is

ORDERED that respondent, Ronald R. Benjamin, is hereby censured for disciplinary violations committed by him in the State of New York.