Keating, J.
The Grace Institute was incorporated by an act of the Legislature (L. 1897, ch. 285) for the purpose of furnishing women and girls instruction in trades and occupations and in branches of domestic arts and science.
Three named members of the Grace family and their successors were constituted the body corporate. The corporation was granted “ all the powers and privileges and [was] subject to the liabilities of a corporation conferred by chapter thirty-five of the general laws known as the general corporation law.”
By virtue of section 3 of the incorporating statute all the powers and privileges of the corporation were to be exercised by the three life members “together with such other persons as they may select and such members and the persons selected by them shall be known as trustees.”
The petitioner in this action, Michael P. Grace, II, was a successor to one of the original life members and, by virtue of that position, a member of the board of trustees of the Institute. During his tenure in those positions Michael, among other things, commenced several actions against the Institute — actions in which he was uniformly unsuccessful. Largely, as a result of the commencement of these actions, charges were drawn up against him and a hearing was held. Thereafter Michael was removed as a trustee and life member of the *312 Institute. This removal was accomplished, despite the fact that there was no provision in the incorporating statute or the by-laws of the corporation relating to the removal of a life member.[1]
Following his removal, Michael commenced an article 78 proceeding seeking judicial review and annulment of the determination made by the life members and trustees of the Institute whereby he was removed as a life member and trustee.
The Special Term Justice declined to rule summarily on the petition and held instead that issues were presented which required a trial. Two questions were formulated: (1) “ Whether or not the Members and Trustees of Grace Institute found in good faith that valid cause existed in August and November, 1963 for the removal of Michael P. Grace, II, as a life member and trustee of Grace Institute”, and (2) “Whether the proceedings before the Members and Trustees * * * afforded the petitioner * * * a reasonable opportunity to be heard”.
The Institute appealed from this determination, claiming that it was entitled to a summary dismissal of the petition.
Up to this point all parties to the litigation were operating under the assumption that this was a membership corporation. The contention of the Institute was that, as such, it possessed an inherent right to expel members for undertaking activities which tended to impair and obstruct the activities of thé corporation (Bockman v. American Inst. of Decorators, 7 A D 2d 495, affd. 7 N Y 2d 850; 37 N. Y. Jur., Membership Corporations, § 34).
The Appellate Division held that the Institute was something more than a “ mere membership corporation ” and that it was more akin to a charitable trust and that the same principles applicable to the removal of a trustee of a charitable trust were applicable to the removal of petitioner as a life member and trustee. The Appellate Division modified the first question for trial as follows: “ 1. Whether or not petitioner (a) in taking the various actions and doing the- several acts set forth in the charges acted in good faith and was loyal to the corporation and (b) if taken and done in good faith whether or not the *313 acts and actions were so reckless and inimical to the interests of the Institute that its corporate activities were substantially obstructed or impaired.”
The Institute appeals by permission of the Appellate Division upon a certified question as to the correctness of its order.
The basis of the Appellate Division’s determination that this corporation be treated as a trust for the purpose of resolving the legal questions presented was its finding that at the time the Institute was created it was doubtful whether property could be dedicated to charitable purposes through the medium of a trust and that, therefore, the Legislature was asked to create this corporation which was 11 sui generis” and “more nearly resembled a charitable trust than a membership corporation ” (25 A D 2d 277, 280).
While the Institute disputes the Appellate Division’s interpretation of the law of trusts as it existed at the time the Institute was created, it is clear that a corporation and not a trust was created and, regardless of what the law as to trusts was at the time, corporate law and not trust law should govern.
The law is settled that a corporation possesses the inherent power to remove a member, officer or director for cause, regardless of the presence of a provision in the charter or by-laws providing for such removal. (People ex rel. Manice v. Powell, 201 N. Y. 194; Fells v. Katz, 256 N. Y. 67; Matter of Koch, 257 N. Y. 318; Bockman v. American Inst. of Decorators, 7 A D 2d 495, affd. 7 N Y 2d 850, supra; Abberger v. Kulp, 156 Misc. 210.)
The question with which we are presented in this case is whether there exists any triable issues relating to the manner in which this petitioner was removed from his position as a life member and trustee.
It has been the consistent policy of the courts of this State to avoid interference with the internal management and operation 'of corporations. (Chelrob, Inc. v. Barrett, 293 N. Y. 442.) Although we are dealing here with a charitable corporation over which the Supreme Court is vested with supervisory powers, the Legislature in creating it set up a governing board of trustees and vested in them the power and authority necessary for the management and operation of the Institute. That body, *314 after hearings and deliberation, has decided that the petitioner’s conduct was so inimical to the corporate interests as to require his removal. In reaching that conclusion, the trustees had before them evidence of a series of lawsuits commenced by the petitioner against the corporation in each of which he was unsuccessful and in none of which did any of the 13 jurists who took part find even so much as a single triable issue.
After reviewing each of these actions and after studying the entire record in this case, we have reached the conclusion that the evidence clearly supported the finding of the trustees that Michael had embarked on a course of conduct designed to involve the Institute in endless and costly litigation and that the suits were undertaken for the purpose of harassing the Institute and its members. Under these circumstances, courts should not substitute their judgment for the judgment of those charged by the Legislature with the responsibility of running the corporation and seeing to it that it fulfills the purposes for which it was created.
In addition, we have examined the procedure by which the petitioner was removed and we have concluded there is no question but that he was given a reasonable opportunity to be heard and to answer the charges leveled against him. At the hearing during which the charges were aired, he was represented by three attorneys and a law assistant. His attorneys were permitted to cross-examine one of the parties who had been instrumental in preparing the charges against Michael and they could have exercised their right to examine others. Yet despite this opportunity to be heard and to present evidence, Michael never took the stand and never even attempted to answer the charges. The objections of Michael to the hearing we find to be without merit. The things to which he objects in no way detracted from his opportunity to be heard or the validity of his removal.
Michael argues, however, that the position of life member was created by the Legislature and “ only the Legislature' has the power to change the rights and privileges specifically granted by the act of incorporation ”. Michael obviously misapprehends the nature of the rights and privileges accorded to him. The Legislature surely could not have intended that a life member retain his position regardless of the manner in *315 which he acted and regardless of the manner in which he abused his trust. The petitioner may not be removed so long as he adheres to what must be regarded as an implied condition of his position—that is so long as he faithfully serves the Institute. Once he breaches that condition and engages in activities that obstruct and interfere with the operation of the corporation and the purposes for which the Legislature created it, he may be removed. Indeed, the statute creating the corporation appears to recognize that a member may leave his position through ways other than death or voluntary resignation. Section 4 provides that a member may designate a successor ‘ ‘ who shall take the place made vacant by the death, resignation or otherwise of the person making such nomination.” (Emphasis added.)
For the reasons stated, we reach the conclusion that there are no issues requiring a trial and that the petition of Michael Grace should be dismissed. •
In addition to the prayer of Michael for the annulment of the action taken by the trustees, Corinne Grace petitions that, if the relief requested by Michael is denied, she be declared his lawful successor as a life member and trustee. This request was not considered by either of the courts below and we do not feel that we should summarily grant the relief requested in the first instance. Nevertheless, since both sides have asked us to consider the issue, we have decided to indicate our view for the guidance of the lower court and in the interest of avoiding future appellate litigation.
As noted earlier, section 4 of the incorporating statute gave the life members the right to designate their successors in the event of [1] ‘ death, resignation or otherwise ’ ’. Prior to his removal, Michael designated Corinne Grace to succeed him in the event of his death, resignation “ or for any reason ”. We believe that the word “ otherwise ” in the incorporating act encompasses his involuntary removal.
The Institute argues that, if Michael’s removal was valid, it terminated his right to appoint his successor. This argument overlooks the fact that Corinne Grace was designated by Michael prior to his removal in accordance with the provisions of the incorporating statute. If the contention of the Institute is adopted, then all designations would be invalid since the *316 death or resignation of the life member after he designates someone to succeed him would, according to this reasoning, terminate his right to appoint.
If Corinne chooses to emulate the conduct of her spouse, then the corporation may remove her from office and, if necessary, petition the Legislature to amend the incorporating act so as to eliminate the position of life member — a position hardly essential to the effective operation of the corporation.
Unless additional evidence is forthcoming when the matter is considered by Special Term, we believe that the relief requested in the petition of Corinne Grace should be granted.
The order of the Appellate Division should be reversed, with costs in all courts to the appellant, and the matter remitted to Special Term for dismissal of the petition of Michael P. Grace, II, and for further proceedings with respect to the petition of Corinne Grace in accordance with this opinion. The question certified is answered in the negative.
Judges Van Voobhis, Bubice and Galnagheb[2] concur with Judge Keating; Chief Judge Fuld and Judges Soilbppi and Bebgan dissent and vote to affirm upon the opinion at the Appellate Division.
Order reversed, with costs in all courts, and matter remitted to Special Term with directions to dismiss the petition of Michael P. Grace, II, and for further proceedings with respect to the petition of Corinne Grace in accordance with the opinion herein. Questions certified answered in the negative.

. One section of the incorporating act provided that absence from, three consecutive meetings Constituted ground for removal of a trustee.

. Designated pursuant to section 2 of article VI of the State Constitution in place of Bbeitel, J., disqualified.