| |
|---|
| **Hyman v Cummings** |
| 2024 NY Slip Op 30945(U) |
| March 20, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 652954/2023 |
| Judge: Judy H. Kim |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: **HON. JUDY H. KIM**
*Justice*

PART **04**

-------------------------------------------------------------------------X

MITCHEL HYMAN,

Petitioner,

- v -

LINDA CUMMINGS,

Respondent.

-------------------------------------------------------------------------X

INDEX NO. **652954/2023**

MOTION DATE **06/20/2023, 07/07/2023**

MOTION SEQ. NO. **001 002**

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 10, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 35, 36

were read on this motion to _____ STAY _____ .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 29, 30, 31, 32, 33, 34, 37

were read on this motion to _____ SEAL _____ .

Upon the foregoing documents, the Petition to stay the binding mediation commenced by Respondent Linda Cummings-Ramone is denied and dismissed and respondent's motion to seal is denied.

## FACTUAL BACKGROUND

Ramones Production, Inc. ("RPI") is the "vehicle through which the musical group, the Ramones . . . markets, merchandises, licenses and produces its memorabilia and musical-related products" (NYSCEF Doc. No. 1 [Petition at ¶11]). Petitioner Mitchel Hyman is a 50% Shareholder of RPI, and one of its four directors. Respondent Linda Cummings-Ramone is RPI's other 50% shareholder and also serves as a director.

**652954/2023 HYMAN, MITCHEL vs. CUMMINGS, LINDA**
**Motion No. 001 002**

**Page 1 of 9**

Pursuant to an Amended and Restated Shareholders' Agreement (the "Shareholders' Agreement"), the parties agreed upon certain procedures for the election and removal of RPI directors:

1. Election and Removal of Directors: Actions by the Board of Directors

(a) General. The Company, to the extent possible, and each of the Shareholders agree to take such action as may be necessary to cause the board of directors of the Company (the "Board of Directors"), to be elected in accordance with the provisions of this Section 1. In furtherance, and not in limitation, of the foregoing, each Shareholder shall vote or cause to be voted, whether at any annual or special meeting of Shareholders of the Company called for the purpose of electing or removing directors or pursuant to a written consent in lieu thereof, all voting shares of the capital stock of the Company (the "Voting Shares") then owned or controlled by such Shareholder in favor of the election of directors designated for election in accordance with Section l(b) or 1(d), as applicable …

(b) Election of Designated Directors.

(i) Each of the Shareholders shall vote all Voting Shares owned or controlled by such Shareholder in favor of causing the Board of Directors to consist of four directors, including Mitchell Hyman and Linda Cummings and two other directors, who shall be designated in accordance with subparagraph (ii) below.

(ii) Mitchell Hyman and Lesher, on the one hand, and Linda Cummings. on the other hand, shall each have the right to designate one additional person to serve with him or her as a director on the Board of Directors (Mitchell Hyman and the director designated by Mitchell Hyman and Lesher, each a "Hyman Director" and together, the "Hyman Directors" and Linda Cummings and the director designated by Linda Cummings, each a "Cummings Director" and together, the "Cummings Directors").

(c) Removal. Mitchell Hyman and Lesher shall be entitled at any time and for any reason (or for no reason) to require the removal of the designated Hyman Director and Linda Cummings shall be entitled at any time and for any reason (or for no reason) to require the removal of the Cummings Director …

(d) Filling Vacancies. If at any time a vacancy is created on the Board of Directors by reason of the death. removal or resignation of either a Hyman Director or a Cummings Director (a "Removed Director"), subject to subparagraphs (i) and (ii) below, the remaining Hyman or Cummings Director, as the case may be, shall have the right to designate a replacement director to fill such vacancy and the

**652954/2023   HYMAN, MITCHEL vs. CUMMINGS, LINDA**       **Page 2 of 9**
**Motion No.  001 002**

2 of 9

Shareholders shall take such action to approve and elect, within twenty (20) days after designation, the director so designated.

(i) If a vacancy is created by reason of the death, removal or resignation of either of the Hyman Directors, the remaining Hyman Director shall have the sole right to designate a nominee to be elected to fill such vacancy until the next annual meeting of the Shareholders of the Company.

(ii) If a vacancy is created by reason of the death, removal or resignation of either of the Cummings Directors, the remaining Cummings Director shall have the sole right to designate a nominee to be elected to fill such vacancy until the next annual meeting of the Shareholders of the Company.

(e) Actions by the Board. Unless otherwise specified, all actions of the Company shall be subject to the approval of a majority of the Board of Directors; provided. however. that the Company may not take any action with regard to the following, without the affirmative vote, or written consent, of all of the members of the Board of Directors of the Company:

(i) any amendment to the Company's certificate of incorporation or by-laws
(ii) any change in the number of directors of the Company
(iii) any change in the Company' s capital structure;
(iv) any action to incur corporate debt;
(v) any capital expenditure;
(vi) any redemption or repurchase of the Company's stock;
(vii) any issuance of shares of capital stock or rights to acquire the same;
(viii) any merger or consolidation of the Company into another entity or any sale of all or substantially all of the Company's assets;
(ix) any dissolution, liquidation or winding up of the Company;
(x) any payment of dividends by the Company; or
(xi) any change in the strategic direction of the Company

(NYSCEF Doc. No. 7 [Shareholder Agreement] [emphasis added]).

The Shareholders' Agreement also sets out two mechanisms to resolve disputes among

RPI's directors or shareholders:

(f) Deadlock. If as to any Company or Shareholder action or matter requiring approval, authorization or other action by the Shareholders or the Board of Directors pursuant to this Agreement or by law is not able to be taken or obtained by reason of a dispute between the Shareholders or the absence of a majority decision by the Shareholders or the Board of Directors (a "Deadlock Event"), then the Shareholders shall proceed to negotiate in good faith, and shall use their reasonable efforts, to resolve such Deadlock Event for a period of ten (10) days

**652954/2023   HYMAN, MITCHEL vs. CUMMINGS, LINDA**                                    **Page 3 of 9**
**Motion No.  001 002**

3 of 9

[* 3]

after notice from any Shareholder of the existence of a Deadlock Event. While any Deadlock Event is pending, the Company and the Shareholders and officers and directors shall continue to operate the Company and its business without interruption in the manner most closely to the ordinary course consistent with past practice. In the event that the Deadlock Event is not resolved within such ten (10) day period, the dispute relating to the Deadlock Event shall be submitted to a mediator, to be selected by the Directors on a case by case basis (the "Mediator") for final and binding mediation …

10. Arbitration.

(a) Any dispute, controversy or claim arising under, out of or in connection with or relating to this Agreement, and any amendment, breach or alleged breach hereof, shall be determined and settled by arbitration pursuant to the rules then in effect of the American Arbitration Association…

(Id. [emphasis added]).

On or about October 7, 2022, petitioner and respondent executed an agreement with Federal Arbitration, Inc. (the "Arbitrator Agreement"), to appointing retired United States District Court Judge Shira A. Scheindlin as a "standby mediator" (the "Mediator") to resolve disputes arising under section 1(f) of the Shareholders' Agreement (NYSCEF Doc. No. 8 [Arbitrator Agreement]).

In April 2023, respondent sought to convene a special meeting of the Board of Directors to remove David Frey as a Director of RPI for cause, based on his alleged failure to disclose corporate opportunities, his disclosure of confidential information and his failure to "respond timely to RPI operational emails." Petitioner did not consent to such a special meeting. Respondent sought to bring this dispute to the Mediator as a "Deadlock Event" under section 1(f) of the Shareholders' Agreement, which petitioner opposed. After receiving written submission and hearing oral argument on the parties' positions, the Mediator issued an order concluding that "the issue of removing [Frey] as a Director of RPI is a Deadlock Event as defined in the Shareholders' Agreement," noting that paragraph (1)a of the Shareholders' Agreement required petitioner or

respondent to defer to the others' selection of their Designated Director in electing or replacing such a director, but was "silent as to the rights that either of those Directors may have to seek the removal of the other party's designated director" (NYSCEF Doc. No. 9 [Order of Mediator at ¶8]).

> The Mediator added that
>
> Paragraph 14(e) of the Shareholders Agreement provides that it is to be "governed and construed in accordance with the laws of the State of New York." Under New York law, "[a] corporation possesses the inherent power to remove a member, officer or director for cause, regardless of the presence of a provision in [the Agreement] providing for such removal." Grace v. Grace Institute, 19 N.Y.2d 307, 313 (1967). New York's Business Corporation Law provides for "[a]n action to procure a judgment removing a director for cause . . . by the holders of ten percent of the outstanding shares." N.Y. Bus. Corp. Law § 706(d). Accordingly, given the silence in paragraph 1(c) and given the clear direction in both the New York statute and caselaw, Linda Cummings-Ramone has the right to seek the removal of Mr. David [Frey] as a Director.
>
> I have been informed by the parties that were a meeting to be called for the purpose of removing Mr. [Frey] as a Director the vote would be 2-2. Thus, there is a Deadlock Event, as defined in paragraph 1(f) of the Shareholders Agreement, and I have the authority to subject that dispute to binding mediation as acknowledged in paragraph 1(f) of that Agreement.

(NYSCEF Doc. No. 9 [Order of Mediator at ¶¶8-10]).

After the Mediator scheduled a binding mediation on this issue, petitioner commenced the instant special proceeding.

In his Petition, petitioner argues that the subject dispute is not a Deadlock Event under the Shareholders' Agreement because section 1(f) is restricted to disputes concerning matters "requiring approval, authorization or other action by the Shareholders or the Board of Directors," and that no such approval is required here, where the Shareholders' Agreement is silent as the process to remove RPI directors for cause and respondent is free to "commence an action under Business Corporations Law §706(d) to remove a director for cause" without resorting to a Board meeting (NYSCEF Doc. No. 1 [Petition at ¶46]). Petitioner also argues, alternatively, that even if

**652954/2023   HYMAN, MITCHEL vs. CUMMINGS, LINDA**
**Motion No. 001 002**

**Page 5 of 9**

5 of 9

INDEX NO. 652954/2023

RECEIVED NYSCEF: 03/20/2024

a vote was required to remove Frey, such a vote would not result in a deadlock because, under sections 1(a), (b), and (d) of the Shareholders' Agreement, respondent must vote in accordance with petitioner's wishes in such a vote.

In opposition, respondent argues that petitioner is "estopped" from bringing the instant special proceeding because it has "litigated and lost the threshold question of whether the present dispute is subject to binding mediation following briefing and oral argument before Judge Scheindlin (NYSCEF Doc. No. 28 [Opp. at p. 7]). Respondent adds that the dispute is a Deadlock Event because New York law vests corporations with the inherent power to remove a director for cause and that, since any such removal would be a company action subject to the approval of a majority of the Board of Directors under section 1 of the Shareholders' Agreement, any tie in such a vote would be a Deadlock Event.

**DISCUSSION**

*Petition to Stay Arbitration*

As a threshold matter, the Court rejects respondent's argument that petitioner has waived its ability to bring this special proceeding to objection to the Mediator's jurisdiction. "An arbitrator's decision to assert jurisdiction, over objection, is subject to a much broader and more rigorous judicial review than an arbitral decision on the merits, and because it is a question for the court to decide, it is subject to de novo judicial review" (See <u>Steyn v CRTV, LLC</u>, 175 AD3d 1, 10-11 [1st Dept 2019] [internal citations and quotations omitted]).

However, upon its de novo review, the Court agrees with respondent that the parties' dispute constitutes a Deadlock Event within the meaning of section 1(f). As the Mediator noted, under New York law, "[a] corporation possesses the inherent power to remove a member, officer or director for cause, regardless of the presence of a provision in [the Agreement] providing for

**652954/2023   HYMAN, MITCHEL vs. CUMMINGS, LINDA**   **Page 6 of 9**
**Motion No.  001 002**

6 of 9

such removal" (Grace v Grace Institute, 19 NY2d 307, 313 [1967]; see also Matter of Davidson v James, 172 AD2d 323, 324 [1st Dept 1991]) and, pursuant to section 1(e) of the Shareholders' Agreement, any such removal requires the approval of its Board of Directors. Accordingly, a deadlock on such a vote falls within the ambit of section 1(f) of the Shareholders' Agreement.

The fact that respondent may move to remove Frey as a director in a proceeding pursuant to BCL §706(d) does not alter this conclusion. Contrary to petitioner's claim, section 1(f) does not require that respondent exhaust other available avenues for removal prior to proceeding through a vote of the Board. Petitioner's argument on this score relies upon a selective reading of section 1(f), focusing exclusively on the phrase "a matter requiring approval, authorization or other action by the Shareholders or the Board of Directors pursuant to this Agreement or by law," while failing to address the fact that section 1(f) is not limited to a "matter" but also contemplates any "company or shareholder action," categories into which, as discussed supra, the underlying dispute here falls.

Petitioner's alternative argument, that a vote to remove Frey would not result in deadlock because respondent would have to defer to petitioner in any such vote, also has no foundation in the text of the Shareholders' Agreement, which mandates that petitioner and respondent defer to each other's removal of their own "designated directors" but does not impose any such requirement on a director's attempt to remove another director's "designated director" for cause.

*Respondent's Motion to Seal*

Respondent's motion to seal NYSCEF Document Numbers 18 and 20-27, which were filed[1] as exhibits to respondent's opposition to the Petition, is denied. In support of its motion,

---

[1] In filing these exhibits, respondent did not comply with section K(3)(b) of the *Protocol On Courthouse And County Clerk Procedures For Electronically Filed Case*s which sets out the proper procedure for temporarily uploading document under seal while a motion to seal is *sub judice* (See https://www.nycourts.gov/LegacyPDFS/courts/1jd/supctmanh/Efil-protocol.pdf) but instead uploaded a single page for each exhibit which stated that the exhibit was "(filed under seal)" while submitting hard copies of these exhibits to the Court by mail.

**652954/2023 HYMAN, MITCHEL vs. CUMMINGS, LINDA**        **Page 7 of 9**
**Motion No. 001 002**

7 of 9

respondent asserts that it does not believe sealing is appropriate but that it nevertheless made this motion in anticipation of objections from petitioner as to the confidentiality of its filings. However, in his response, petitioner argues that the Court should only seal three of these exhibits, which include various emails discussing RPI business, including the licensing of Ramones music for a film (which film is now completed) and play (See NYSCEF Docs. No. 20-22).

22 NYCRR §216.1(a) directs that "a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof." On this motion, respondent "has the burden to demonstrate compelling circumstances to justify restricting public access" (Mosallem v Berenson, 76 AD3d 345, 349 [1st Dept 2010] [internal citations omitted]). The bare assertion of confidentiality by her counsel does not satisfy Respondent's burden here (Id. at 350-351 [1st Dept 2010]). Accordingly, respondent's motion is denied. However, as a portion of respondent's Exhibit F indisputably contains private medical information that is irrelevant to this action, the Court directs that the first eighteen lines of text (which concern this medical issue) contained in Exhibit F be redacted and then the document shall be uploaded to NYSCEF.

Accordingly, it is

**ORDERED** and **ADJUDGED** that the Petition is denied and this proceeding dismissed; and it is further

**ORDERED** that respondent's motion to seal is denied; and it is further

**ORDERED** that respondent is directed to upload documents previously filed "under seal" as exhibits to its opposition to the Petition within five days of the date of this order; and it is further

**ORDERED** that, within twenty days from the date of this decision, order, and judgment, counsel for respondent shall serve a copy of this decision, order, and judgment, with notice of

**652954/2023   HYMAN, MITCHEL vs. CUMMINGS, LINDA**
**Motion No.  001 002**

**Page 8 of 9**

8 of 9

entry, upon petitioner and the Clerk of the Court, who shall enter judgment accordingly; and it is further

ORDERED that service upon the Clerk of the Court shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address www.nvcourts.gov/supctmanh).

This constitutes the decision, order, and judgment of the Court.

| 3/20/2024 | | | | HON. JUDY H. KIM, J.S.C. | |
|-----------|---|---|---|---|---|
| DATE | | | | | |
| CHECK ONE: | X CASE DISPOSED | | | ☐ NON-FINAL DISPOSITION | |
| | ☐ GRANTED | X DENIED | | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

652954/2023   HYMAN, MITCHEL vs. CUMMINGS, LINDA
Motion No.  001 002

Page 9 of 9

9 of 9