**Eager v American Mensa, Ltd.**

2025 NY Slip Op 33011(U)

July 31, 2025

Supreme Court, Kings County

Docket Number: Index No. 508465/25

Judge: Carolyn E. Wade

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

KINGS COUNTY CLERK
F~~~~

2025 AUG -6 A 9: 23

At an IAS Term, Part 84 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 31ˢᵗ day of July, 2025.

PRESENT:

HON. CAROLYN E. WADE,
                              Justice.

----------------------------------------------------------------X

MICHAEL J. EAGER, FRANK MOUNIER,
STEVE WELCH, MATT CRAWFORD,
NANCY CAMPBELL, DAVID MCCALLISTER,
KELLY-MARIE JONES, KATHERINE KLASEN,
LILY NOONAN, KIMBERLY STRICKLAND,

                              Petitioners,
             -against-

AMERICAN MENSA, LTD.,

                              Respondent.

----------------------------------------------------------------X

Index No.: 508465/25

MS# 1

The following e-filed papers read herein:                    NYSCEF Doc Nos.:

Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations) Annexed_____          1-13, 24
Opposing Affidavits (Affirmations)_____          14-21, 25
Affidavits/Affirmations in Reply _____          22-23

Upon the foregoing papers, petitioners Michael J. Eager, Frank Mounier, Steve Welch, Matt Crawford, Nancy Campbell, David McCallister, Kelly-Marie Jones, Katherine Klasen, Lily Noonan and Kimberly Strickland (collectively, petitioners) move for a judgment, pursuant to Article 78 of the Civil Practice Law and Rules (CPLR Article 78): (1) declaring that the removal of petitioners from their positions as regional vice chairs and directors of the board of directors of respondent American Mensa, Ltd. (respondent)

1

violated respondent's bylaws; and (2) reinstating petitioners to the positions in question (motion sequence number 1).

Petitioners' motion is denied and the petition is dismissed.

## Background

### *The Parties*

In this internecine dispute pitting two leadership factions amidst respondent's ranks against one another, petitioners brought the present special proceeding as a vehicle to secure reinstatement to their positions on respondent's board of directors (the Board) (*see* NYSCEF Doc No. 1, petition, ¶ 1).

Respondent is a New York not-for-profit corporation governed by bylaws (the Bylaws), which provide that "Mensa's purposes are to identify and foster human intelligence for the benefit of humanity; to encourage research in the nature, characteristics, and uses of intelligence; and to provide a stimulating intellectual and social environment for members" (*see* NYSCEF Doc No. 18, Bylaws, ¶ I [2]).

Lori J. Norris (Chair Norris) joined respondent in 1990 and has served in several capacities on the Board, including as regional vice chair, secretary, first vice chair and currently as chair (*see* NYSCEF Doc No. 15, Norris aff, ¶ 4). For their part, the eight petitioners were, until the events that precipitated the instant proceeding, members of respondent's Board (*see* NYSCEF Doc No. 1, petition, ¶ 3).

### *The Genesis of the Dispute*

At the root of the parties' dispute lies the September 21, 2024 executive session of the Board, held in Hurst, Texas (the September Session) (*see* NYSCEF Doc No. 5, Eager

2

[* 2]

aff, ¶ 9). During the September Session, petitioners unexpectedly brought a motion to remove first vice chair Ian Randal Strock (FVC Strock) from his position on the Board, at which juncture Chair Norris, in unison with Board secretary Trebor Lefebvre, cautioned petitioners that they were in violation of respondent's Bylaws by virtue of having failed to: (i) set forth the motion on the meeting agenda; (ii) provide an opportunity for a fair and impartial hearing; and (iii) afford FVC Strock an opportunity to prepare a defense and circulate his position to the Board (*see* NYSCEF Doc No. 15, Norris aff, ¶ 17).

To remedy this ostensible contravention of the Bylaws, Chair Norris, along with other Board members, sought an adjournment of the motion (*id.* ¶ 17). Petitioners rebuffed such course of action, indicating that they would finalize the removal and that they had the votes to do so (*id.* ¶ 18). Petitioners thereafter voted to overrule Chair Norris and proceeded to bring the motion (*id.*). Chair Norris posits that petitioners' decision to proceed with the motion wrested from FVC Strock both the right to a fair hearing and the opportunity to mount a defense (*id.*).

### *The Aftermath of the September Session*

In the wake of these developments, respondent's national hearings committee (the Hearings Committee) received complaints attendant to petitioners' actions with regard to FVC Strock during the September Session, as recounted in petitioner Michael J. Eager's (petitioner Eager) affidavit (*see* NYSCEF Doc No. 5, Eager aff, ¶ 10). In turn, petitioners were notified of the complaints leveled against them, as well as given the opportunity to contest the charges and request a hearing (*see* NYSCEF Doc No. 15, Norris aff, ¶ 19).

3

[* 3]

Petitioners contested the complaints and were subsequently advised on December 4, 2024 that the hearing was scheduled for January 11, 2025 (*id.* ¶ 21).

### The January 14, 2025 Decision

The proceeding before the Hearings Committee was held on January 11, 2025 (the Hearing) (*see* NYSCEF Doc No. 5, Eager aff, ¶ 17). The Hearings Committee issued a decision on January 14, 2025 (the Decision) in which the rationale underlying the determination reached is exhaustively delineated (*see* NYSCEF Doc No. 7, Decision, ¶¶ 9-11). In the Decision, the Hearings Committee found that petitioners intentionally contravened the Bylaws in conjunction with their motion to remove FVC Strock during the September Session and that, by dint of doing so, they committed an act inimical to respondent (*id.* ¶¶ 9-10).

Specifically, the Hearings Committee determined that petitioners deprived FVC Strock of his right to a fair hearing, by: (i) failing to give notice to FVC Strock of their motion to remove him from his position on the Board during the September Session, thereby all but stripping him of the opportunity to formulate a defense (*id.* ¶ 9); and (ii) failing to give FVC Strock the opportunity to circulate his position to the panel conducting the hearing, namely, the Board (*id.*).

The Hearings Committee further concluded in the Decision, that petitioners' actions in moving to remove FVC Strock from his position on the Board, in violation of the Bylaws, were intentional as petitioners proceeded along the removal route notwithstanding Chair Norris's admonition to petitioners that doing so without affording FVR Strock notice of the motion was at odds with the Bylaws (*id.* ¶ 9 [a]).

4

[* 4]

Based on the foregoing, the Hearings Committee determined in the Decision that, insofar as petitioners engaged in an act inimical to respondent, they were to be: (i) removed from every national, regional and local office they then held with respondent; and (ii) barred from serving in any national, regional or local office of respondent for a period of six years for certain petitioners and a period of twelve years for the remaining petitioners (*id.* ¶ 10).[1]

## Discussion

### *Respondent Has Made a Prima Facie Showing of Entitlement to Dismissal of the Petition*

Based on the evidence adduced by the parties, coupled with applicable precedent in the CPLR Article 78 context, respondent has made a prima facie showing buttressing its entitlement to dismissal of the petition.[2]

Respondent has proffered prima facie evidence that petitioners knowingly flouted the Bylaws in connection with their motion to remove FVC Strock amid the September Session, and that, as a corollary, they engaged in an act detrimental to respondent (*see* NYSCEF Doc No. 15, Norris aff, ¶¶ 17-26; *see also* NYSCEF Doc No. 7, Decision, ¶¶ 9-11).

In particular, Chair Norris avers in her affirmation that petitioners orchestrated the removal without due process of their colleague, FVC Strock, by failing to afford him the

---

[1] Pursuant to the Decision, those petitioners who were non-voting members of the Board were subject to the six-year bar (*id.* ¶ 10 [b] [1]), while the petitioners who were voting members of the Board were subject to the twelve-year bar (*id.* ¶ 10 [b] [2]).

[2] It shall be incumbent on the court to ascertain whether petitioners, faced with respondent's prima facie showing, have tendered evidence undermining such showing, which matter will be explored in a subsequent section.

5

[* 5]

possibility to disseminate his stance to the Board, which presided over the September Session, and by refraining from notifying him of petitioners' planned removal motion, hence denying him the means to elaborate a defense (*see* NYSCEF Doc No. 15, Norris aff, ¶¶ 17-19).

In light of these developments, and of complaints lodged against petitioners associated with the putative lack of due process provided by petitioners to FVC Strock in connection with the September Session, the Hearings Committee scheduled the Hearing to proceed on January 11, 2025, granting petitioners in excess of one month notice of the Hearing date, thus permitting them to marshal evidence, and prepare for, the Hearing (*see* NYSCEF Doc No. 5, Eager aff, ¶ 10; *see also* NYSCEF Doc No. 15, Norris aff, ¶¶ 19-21).

During the January 11, 2025 Hearing before the Hearings Committee, petitioners were afforded the benefit of representation and called witnesses to present testimony (*see* NYSCEF Doc No. 15, Norris aff, ¶ 24). As set forth more fully above, the January 11, 2025 Hearing culminated in the January 14, 2025 Decision in which the Hearings Committee determined that petitioners intentionally infringed the Bylaws by moving to remove FVC Strock without due process during the September Session and that, by so doing, petitioners engaged in an act inimical to respondent, warranting petitioners' removal from their positions (*see* NYSCEF Doc No. 7, Decision, ¶¶ 9-11).

The circumstances underlying petitioners' removal are analogous to the circumstances at issue in the Court of Appeals' controlling precedent in the CPLR Article 78 non-profit arena. In *Matter of Grace v Grace Inst.* (19 NY2d 307, 311 [1967]), petitioner (petitioner trustee), a member of the board of trustees of the Grace Institute (the Institute),

6

an entity providing vocational training to women, instituted several actions against the Institute, none of which came to fruition. Owing to such actions, an internal hearing was held by the Institute concerning petitioner trustee, which resulted in the latter's removal as a trustee.

Following his removal, petitioner trustee, as in the present matter, commenced a CPLR Article 78 proceeding seeking judicial review and annulment of the determination made by the board of trustees of the Institute to remove him as trustee. The New York Court of Appeals held that the Institute was entitled to the dismissal of the petition based on a confluence of considerations, which are present in the instant proceeding (*Grace*, 19 NY2d at 313-315). In particular, the Court underscored that the Institute's board of trustees did not reach its determination to remove petitioner trustee rashly, but, rather, as here, did so after duly deliberating and conducting a hearing, leading to its finding that petitioner trustee's conduct was so inimical to the interests of the Institute as to require his removal (*id.* at 313-314).

Notably, the nature of petitioner trustee's misconduct at issue in *Grace* that led to the board of trustees' finding that petitioner trustee engaged in conduct inimical to the Institute (that is, instituting meritless lawsuits against the Institute) is the functional equivalent of petitioners' alleged misconduct in the proceeding before this court (namely, petitioners' removal of their colleague FVC Strock during the September Session, after having deprived him of notice of the hearing and of the opportunity to share his position with the panel conducting the hearing) (*id.* at 314).

7

[* 7]

The *Grace* Court articulated the rationale underpinning its determination that the dismissal of petitioner trustee's petition was warranted as his activities were incompatible with his duty faithfully to serve the Institute since he engaged "in activities that obstruct[ed] and interfere[ed] with the operation of the corporation . . . he may be removed," which rationale applies with equal vigor in the instant proceeding (*id*. at 314-315).

The New York Court of Appeals in *Grace* gave substantial weight to the notion that petitioner trustee was afforded procedural due process by the board of trustees in relation to the hearing that led to his removal, including the opportunity to be heard in the midst of the hearing crucible, as well as representation during the hearing, much like petitioners in the instant matter (*id*. at 312 and 314).

Our state's highest court in *Grace* expounded as follows upon the laissez-faire approach characterizing its policy in the context of CPLR Article 78 proceedings involving entities' decisions to remove, as here, upper-tier officials:

> "The law is settled that a corporation possesses the inherent power to remove a member, officer or director for cause, regardless of the presence of a provision in the charter or by-laws providing for such removal . . . The question with which we are presented in this case is whether there exists any triable issues relating to the manner in which this petitioner was removed from his position as a life member and trustee.
>
> "It has been the consistent policy of the courts of this State to avoid interference with the internal management and operation of corporations.
>
>          \*   \*   \*
>
> "Under these circumstances, courts should not substitute their judgment for the judgment of those charged by the Legislature with the responsibility of running the corporation

8

[* 8]

and seeing to it that it fulfills the purposes for which it was created."

(*id.* at 313-314).

In short, the Court of Appeals' leading *Grace* decision, and its progeny, militate in favor of dismissing the petition for reinstatement in light of the evidence adduced by respondent as to petitioners' conduct inimical to the interests of respondent in removing FVC Strock without due process, along with the courts' aversion to substitute their judgment for that of those charged with leading corporate entities (*id.* at 312-314; *see also Matter of Davidson v James*, 172 AD2d 323, 324 [1st Dept 1991] [dismissed petition to restore former members' positions since "[p]etitioners have failed to make a showing warranting court intervention into the internal affairs of respondent . . . where there is no indication that the petitioners' removal was tainted by fraud or other wrongdoing"]); *Matter of Scipioni v Young Women's Christian Assn. of Rochester & Monroe County*, 105 AD2d 1113 [4th Dept 1984] [a court should not interfere in the internal affairs of a not-for-profit corporation unless a clear showing is made to warrant such interference, such as fraud, violation of bylaws or other wrongdoing]).

### *Respondent Has Made a Prima Facie Showing that the Decision Was Neither Arbitrary Nor Capricious*

Pursuant to CPLR Article 78, the court's mandate is narrowly-circumscribed to reviewing the record before respondent and ascertaining whether its determination was arbitrary and capricious based upon such record (*see Matter of Borenstein v New York City Employees' Retirement Sys.*, 88 NY2d 756, 761 [1996]; *see also Matter of Boyd v New*

9

[* 9]

*York City Employees' Retirement Sys.*, 202 AD3d 1082, 1083 [2d Dept 2022]; *Matter of Gray v New York State Div. of Hous. & Community Renewal*, 177 AD3d 738, 740 [2d Dept 2019]). As the Court of Appeals held in a seminal decision in this area, "[a]rbitrary action is without sound basis in reason and is generally taken without regard to the facts" (*see Matter of Pell v Board of Educ.*, 34 NY2d 222, 231 [1974]).

If a rational basis exists for a respondent's determination in the CPLR Article 78 context, such determination must be sustained (*see Matter of Pell*, 34 NY2d at 230; *see also Matter of Clark v New York State Div. of Hous. & Community Renewal*, 193 AD3d 726, 727 [2d Dept 2021]; *Matter of Lucas v Board of Educ. of the E. Ramapo Cent. Sch. Dist.*, 188 AD3d 1065, 1067 [2d Dept 2020]). Consequently, a court cannot substitute its judgment for that of a respondent so long as the respondent's decision is rationally rooted in the record (*see Matter of Borenstein*, 88 NY2d at 761; *see also Matter of Clarke v Board of Trustees of N. Y. City Fire Dept., Art. 1-B Pension Fund*, 46 AD3d 559, 560 [2d Dept 2007]; *Matter of Vastola v Board of Trustees of the N. Y. City Fire Dept., Art. 1-B Pension Fund*, 37 AD3d 478 [2d Dept 2007]; *Matter of Santoro v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 217 AD2d 660 [2d Dept 1995]).

At the core of the Decision lies petitioners' election, during the September Session, to wrest procedural due process rights from FVC Strock by removing him from the Board without notice of petitioners' intended removal motion, impairing his ability to devise a defense, all the while vitiating his ability to circulate his position to the Board (*see* NYSCEF Doc No. 15, Norris aff, ¶¶ 17-19).

10

Petitioners' decision to forge ahead on this path was at variance with the Bylaws, which provide that, as a condition precedent for the removal of an officer during a Board meeting:

> "The resolution of the [Board] that an officer is to be replaced must fulfill the following requirements:
>
> * * *
>
> "It must be set out in the agenda [for the meeting].
>
> * * *
>
> "The [Board] must provide an opportunity for the circulation to the full membership of the [Board] of the concerned officer's views . . . ."

(NYSCEF Doc No. 18, Bylaws, ¶¶ 10 [b][ii] and [c][ii]).

Based on the foregoing, respondent has proffered evidence establishing that: (i) in removing FVC Strock from the Board during the September Session, petitioners contravened the Bylaws by failing to adhere with the procedural due process protections woven into the fabric of the Bylaws (*id.*); (ii) petitioners intentionally infringed the Bylaws since Chair Norris cautioned them during the September Session that their proposed removal of FVC Strock without notice was incompatible with the Bylaws (*see* NYSCEF Doc No. 15, Norris aff, ¶ 17); (iii) in contrast, the Hearing Committee hewed closely to the Bylaws in connection with the January 11, 2025 Hearing by duly providing petitioners with notice of the Hearing on December 4, 2025, permitting them to circulate information in their defense and allowing them to proceed with representation of their choice during the Hearing (*id.* ¶ 19-21); and (iv) in the aftermath of the Heating, the Hearings Committee

11

issued the 17-page Decision on January 14, 2025, which presents in methodical fashion the bases undergirding its finding that petitioners intentionally violated the Bylaws in relation to their motion to remove FVC Strock during the September Session, and, as such, engaged in an act inimical to respondent, leading to their removal (*see* NYSCEF Doc No. 7, Decision, ¶¶ 9-11).

In these circumstances, it cannot be gainsaid that respondent has made a prima facie showing that the Decision was not arbitrary and capricious in the intendment of applicable precedent in the CPLR Article 78 context, thereby warranting sustaining such Decision. In a decision featuring facts comparable to those present herein, *Matter of Purpura v Richmond County Country Club* (114 AD2d 460, 461 [2d Dept 1985]), petitioner instituted a proceeding under CPLR Article 78 to challenge his conditional expulsion from respondent, a non-profit country club. The Appellate Division, Second Department denied the relief sought in the petition, determining that petitioner's conduct in persistently endeavoring to have the country club's manager terminated "could well be considered inimical to the interests of the club in maintaining a harmonious program for the benefit of all the members," and, as such, could serve as a basis for the board of governors to expel him (*Purpura*, 114 AD2d at 461-462 [internal quotation marks omitted]).

The *Purpura* court determined that the board of governors' decision to conditionally expel petitioner was not capricious in that, as in the present case, his "conduct was not trivial in nature, but was viewed by the board of governors as divisive and disruptive, especially in view of the Country Club's stated objective of promoting recreation and social intercourse among its members" (*id.* at 462). As the Appellate Division, Second

12

[* 12]

Department highlighted the decidedly limited role to be played by courts in reviewing the propriety of a not-for-profit entity's decision to effect the removal of one or more individuals in circumstances where, as in the present proceeding, actions inimical to the entity have emerged:

> "An association may expel one of its members for a violation of its established rules for which expulsion is provided or even for such conduct as clearly violates the fundamental objects of the association, and if persisted in and allowed would thwart those objects or bring the association into disrepute.
>
> * * *
>
> "The court may not consider whether it would have arrived at the same conclusion as the Country Club's board of governors, or even whether such a conclusion was or was not reasonable, but must confine itself solely to the question of whether the case was so bare of evidence to sustain the decision that no honest mind could reach the conclusion that the board reached."

(*id.* at 461 [internal quotations and brackets omitted]; *see also Matter of Kelly v Northport Yacht Club, Inc.*, 44 AD3d 858, 859 [2d Dept 2007] [denied and dismissed CPLR Article 78 petition to vacate petitioner's membership termination based on court's finding that respondent's action was not arbitrary and capricious since petitioner violated of respondent's rules]; *Matter of Parisi v New York County Med. Socy.*, 177 AD2d 369, 370 [1st Dept 1991] [denied CPLR Article 78 petition to vacate respondent's rejection of petitioner's president-elect application since "[r]espondent's determination was rationally based upon the unambiguous language of the bylaws, and, as such, cannot be disturbed by judicial review"]).

***Petitioners Eschew the Substance of the Decision***

13

[* 13]

At its core, the petition seeks the reinstatement of petitioners' positions on the Board, from which positions they were removed pursuant to the January 14, 2025 Decision (*see* NYSCEF Doc No. 1, petition, ¶ 1 [a], [b] and [c]). However, an analysis of petitioners' motion reveals that they steer clear of the substance of the Decision (*see* NYSCEF Doc No. 5, Eager aff, ¶¶ 7-28). Petitioners' attempt to challenge the Decision without grappling with the essence of such Decision is unavailing.

Notably absent from the petition and petitioner Eager's affirmation alike is any attempt to refute the Board's determination in the Decision that the removal of petitioners was warranted in light of petitioners' violation of the Bylaws in connection with their motion to remove FVC Strock during the September Session (*see* NYSCEF Doc No. 1, petition, ¶¶ 13-43; *see also* NYSCEF Doc No. 5, Eager aff, ¶¶ 8-28).

Particularly noteworthy, nowhere in their moving papers do petitioners address the Board's finding that petitioners intentionally violated the Bylaws, and divested FVC Strock of the opportunity for a fair hearing, by: (1) failing to notify FVC Strock of their motion to remove him from the Board during the September Session, thus compromising his ability to devise a defense (*see* NYSCEF Doc No. 7, Decision, ¶ 9); and (2) withholding from FVC Strock the opportunity to circulate his arguments to the panel presiding over the hearing (*id.*).

Petitioners' decision to sidestep the heart of the Decision in their petition, affirmation in support, and reply (to wit, the Board's determination that petitioners intentionally ran afoul of the Bylaws by depriving FVC Strock of procedural due process, thereby committing an act inimical to respondent) is pivotal. Indeed, as set forth above, the

14

[* 14]

Board's finding that petitioners engaged in an act inimical to respondent, coupled with Chair Norris' affirmation (*see* NYSCEF Doc No. 15, Norris aff, ¶¶ 17-26), constitute a prima facie showing of respondent's entitlement to dismissal of the petition.

In sum, petitioners' decision to bypass the nucleus of the Decision (that is, the Board's determination that respondents engaged in an act inimical to respondent, which determination gives rise to a prima facie showing of respondent's entitlement to dismissal of this proceeding) warrants dismissal of the petition. Indeed, when a party fails, as here, to rebut through admissible evidence an adverse party's prima facie showing of entitlement to dismissal of a claim, dismissal is appropriate (*see Gluck v Mapfre Ins. Co. of N.Y.*, 221 AD3d 662, 664 [2d Dept 2023]; *see also Byrne v Sidhu*, 215 AD3d 622 [2d Dept 2023]; *Matter of Kelly*, 44 AD3d at 859 [dismissed CPLR Article 78 proceeding challenging respondent's termination of petitioner's membership since, faced with respondent's prima facie showing of entitlement to dismissal based on evidence that termination was not arbitrary or capricious, petitioner failed to refute such showing]; *Matter of Marandino v Westchester Country Club, Inc.*, 33 AD3d 800 [2d Dept 2006] [dismissed CPLR Article 78 proceeding to review country club's termination of membership since, after respondent made a prima facie showing that dismissal of the proceeding was warranted given the evidence that respondent's termination of petitioner was not arbitrary or capricious, petitioner failed to negate such showing through factual evidence]).

### Conclusion

Based on the foregoing, petitioners' motion for a judgment, pursuant to CPLR Article 78, declaring that the removal of petitioners from their positions as regional vice

15

[* 15]

chairs and directors of the Board violated respondent's bylaws, and reinstating petitioners to the positions in question, is denied. Moreover, the petition is dismissed.

Any arguments not expressly addressed herein were considered and deemed to be without merit. Any relief not expressly granted herein has been considered and is denied.

This constitutes the decision, order and judgment of the court.

ENTER

_____
J.S.C.

HON. CAROLYN E. WADE
JUSTICE OF THE SUPREME COURT

KINGS COUNTY CLERK
FILED
2025 AUG -6 A 9: 54

16

[* 16]